UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SCOTT A. HODES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0161-CKK |
| | ) | |
| HOUSING AND URBAN | ) | |
| DEVELOPMENT, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff hereby opposes defendant's motion for summary judgment and cross-moves for summary judgment. For the reasons set forth in the accompanying memorandum, there are no genuine issues of material fact in dispute and plaintiff is entitled to judgment as a matter of law. In support of this motion, plaintiff submits the accompanying memorandum of law, a statement of material facts as to which there are no genuine issue, and attached Exhibits.

Respectfully submitted,

_____/S/_____
Scott A. Hodes,
(D.C. Bar No. 430375)
P.O. Box 42002
Washington, D.C. 20015
Phone (301) 404-0502
Fax (301) 738-2128

Plaintiff

Dated: May 25, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SCOTT A. HODES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0161-CKK |
| | ) | |
| HOUSING AND URBAN | ) | |
| DEVELOPMENT, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to LcvR 7(h), Plaintiff Scott A. Hodes hereby responds to Defendant Housing and Urban Development's ("HUD") statement of material facts not in genuine dispute and states the following additional facts:

1.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

2.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

3.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

4.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

5.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

6.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

7.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

8.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

9.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks to itself.  However, plaintiff denies sentence four as the Declaration of Theodore Foster, ¶ 19, specifically states that payee addresses are not contained in the Unclaimed Funds List database.

10.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

11.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

12.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.

13.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.  Plaintiff specifically denies sentences two through six as opinion of Theodore Foster without any factual substantiation.

14.  This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself.  Plaintiff denies the paragraph as opinion of Theodore Foster without any factual substantiation.

15. This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself. Plaintiff denies the paragraph as opinion of Theodore Foster without any factual substantiation.

16. This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself. Plaintiff denies the paragraph as opinion of Theodore Foster without any factual substantiation.

17. This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself. Plaintiff denies the paragraph as opinion of Theodore Foster without any factual substantiation.

18. Plaintiff admits that on December 14, 2004, he requested documents from HUD under the Freedom of Information Act ("FOIA"), and refers the Court to that request for a full and complete statement of its contents. See Exhibit A, attached herein.

19. This paragraph is an overall summary of HUD's processing of plaintiff's FOIA request to it, which speaks for itself.

20. This paragraph is a characterization of Mr. Foster's Declaration, which speaks for itself. Plaintiff denies the second sentence as the opinion of Theodore Foster without any factual substantiation.

21. By letter dated April 18, 2005, defendant denied plaintiff's FOIA request. Initially defendant denied that any responsive existed. Defendant than withheld the records pursuant to FOIA Exemptions 4 and 6. Defendant failed to address plaintiff's specific reference of Lepelletier v. FDIC, 164 F.3d 37 (D.C. Cir. 1999) in his request letter, and this case's effect on the releasability of the requested records. See Exhibit B, attached herein.

23.  By letter dated June 8, 2005, plaintiff appealed the defendant's denial of requested records.  Plaintiff appealed the search for the requested records in that defendant had stated that no records responsive records existed.  Plaintiff then appealed the withholding of requested records under FOIA Exemptions 4 and 6.  See Exhibit C attached herein.

24.  By letter dated March 17, 2006, defendant affirmed the withholding of responsive records pursuant to FOIA Exemptions 4 and 6.  Defendant did however acknowledge that responsive records did, indeed, exist.  See Exhibit D attached herein.

25.  By letter dated April 4, 2006, plaintiff, in an attempt to avoid litigation in this matter, again contacted HUD to seek further explanation of its finding that the requested information was withholdable pursuant to FOIA Exemption 4.  See Exhibit E attached herein.

26.  By letter dated June 23, 2006, defendant responded to plaintiff's April 4, 2006 clarification letter.  Defendant indicated to plaintiff that the submitters of the information withheld were "specific individual investors."  Additionally, defendant stated that the submitters of the information to Ginnie Mae "are investors in Ginnie Mae mortgage-backed securities."  See Exhibit F attached herein.

27. Fannie Mae and Freddy Mac payments that go unclaimed are subject to applicable state escheat statutes.  See www.freddiemac.com/mbs/docs/class_a_taxable_oc_9_1_05.pdf at 38 (last visited May 23, 2007);  www.fanniemae.com/markets/debt/pdf/offering_notes_032107.pdf at 27 (last visited May 23, 2007).

28.  Many federal agencies host databases on the internet that identify individuals that are owed unclaimed fund, which can be found at http://www.usa.gov/Citizen/Topics/Money_Owed.shtml.  (last visited May 9, 2007). Some of these agencies, such as the National Credit Union Administration, post listings of those who are owed funds, including names and other identifying information about the individuals owed the funds.  See www.ncua.gov/AssetMgmtCent/unclaimed.html. (last visited May 9, 2007).  Other sites, such as the one maintained by defendant HUD for unclaimed FHA mortgage insurance payments, have a database in which one can type a last name and receive identifying information and amount owed on the individuals owed these unclaimed funds.  See www.hud.gov/offices/hsg/comp/refunds/index.cfm (last visited May 9, 2007).

Respectfully submitted,


_____/S/_____
Scott A. Hodes,
(D.C. Bar No. 430375)
P.O. Box 42002
Washington, D.C.  20015
Phone (301) 404-0502
Fax (301) 738-2128

Plaintiff

Dated:  May 25, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SCOTT A. HODES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0161-CKK |
| | ) | |
| HOUSING AND URBAN | ) | |
| DEVELOPMENT, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGEMENT AND IN OPPOSITION TO DEFENDANTS' MOTION
<u>FOR SUMMARY JUDGMENT</u>**

<u>**Introduction**</u>

On December 14, 2004, plaintiff submitted a Freedom of Information Act

("FOIA") request to defendant United States Department of Housing and Urban

Development ("HUD") seeking a "copy of the payee names, dollar amounts; check

numbers issue dates and payee addresses contained in the Ginnie Mae Unclaimed Funds

System (UFS)." <u>See</u> Exhibit A attached herein.

By letter dated April 18, 2005, defendant withheld the responsive material

pursuant to FOIA Exemptions 4 and 6. <u>See</u> Exhibit B attached herein. By letter dated

June 8, 2005, plaintiff administratively appealed defendant's denial of the responsive

records. <u>See</u> Exhibit C attached herein. In his appeal, plaintiff noted the decision of the

United States Court of Appeals for the District of Columbia in <u>Lepelletier v. FDIC</u>, 164

F.3d 37 (D.C. Cir. 1999) which covered information concerning unclaimed funds. <u>Id.</u>

By letter dated March 17, 2006, defendant affirmed its initial denial of plaintiff's request

pursuant to FOIA Exemptions 4 and 6. <u>See</u> Exhibit D attached herein. In reaching this

decision, defendant did not address the <u>Lepelletier</u> decision, nor did it provide any reasonable explanation for its withholding decision.  <u>Id.</u>

By letter dated April 4, 2006, plaintiff in an attempt to avoid litigation, sought clarification of the defendant's March 17, 2006, appeal decision.  <u>See</u> Exhibit E attached herein.  Plaintiff asked if the submitters of the information were brokerage firms or other types of entities.  <u>Id.</u>  Plaintiff also asked if the submitters are investors in Ginnie Mae mortgages or other entities.  <u>Id.</u>  Finally, plaintiff asked defendant to outline the process in which the information is submitted to defendant.  <u>Id.</u>

By letter dated June 23, 2006, defendant responded to plaintiff's April 4, 2006 letter.  Defendant stated only that "information identifiable to specific individual investors was withheld" and that the submitters of the information are "investors in Ginnie Mae mortgage-backed securities."  <u>See</u> Exibit F attached herein.

As plaintiff was not only denied the responsive material he sought, but provided no sensible explanation describing why the material was withheld, this suit was brought.

## <u>Legal Analysis</u>

For summary judgment to be granted in a FOIA lawsuit on the basis of the agency's affidavits, the affidavits must describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and the agency can not be controverted by either contrary evidence in the record nor by evidence of agency bad faith.  <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981)

For the reasons demonstrated below, defendant has failed to establish, via its submitted affidavit, that the material responsive to plaintiff's request may be withheld

pursuant to the three FOIA exemptions cited in its motion for summary judgment.  Thus,

summary judgment is not appropriate for defendant and the material should be released to

plaintiff.

## I.  EXEMPTION 3 DOES NOT APPLY TO THE WITHHELD RECORDS

Exemption 3 of the FOIA allows for the withholding of material that is

"[s]pecifically exempted from disclosure by statute. . . provided that such statue (A)

requires that the material be withheld from the public in such a manner as to leave no

discretion on the issue, or (B) establishes particular criteria for withholding or refers to

particular criteria for withholding or refers to particular types of matters to be withheld."

5 U.S.C. § 552(b)(3).

To establish that material is protected pursuant to Exemption 3, it must be

established that the asserted statute is a statute of Exemption under the FOIA and second,

the material must satisfy the criteria for exemption under that statute.  Id.; CIA v. Sims,

471 U.S. 159, 167 (1985); Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990).  As

will be shown below, defendant has failed to establish that Exemption 3 applies to the

withheld documents.

Initially, defendant has not properly asserted the privacy provisions of the Gramm

Leach Bliley Act ("Gramm Leach Bliley") found at 15 U.S.C. § 6801-6809 to withhold

the requested records.  At no place in the administrative record are these provisions ever

invoked by defendant.  No correspondence from defendant ever mentions Gramm Leach

Bliley or Exemption 3 of the FOIA.  See Exhibits B, D, and F attached hereto.  Nor does

the declaration of Theodore Foster ("hereinafter "Foster Decl.") ever mention Gramm

Leach Bliley or Exemption 3.  For a FOIA request to be properly invoked in litigation,

the agency must invoke the exemption, at the very least, in its <u>Vaughn</u> index.  <u>See</u> <u>Ryan</u> <u>v. Dep't of Justice</u>, 617 F.2d 781, 792 n.38.  Only in Defendant's Motion for Summary Judgment at 5-6 ("Defendant's Motion") is Gramm Leach Bliley and Exemption 3 mentioned as a basis for withholding the responsive material.  Thus, defendant HUD's failure to ever invoke Exemption 3 in this matter, waives its right to use Exemption 3 as a basis for withholding the responsive material from plaintiff.

Alternatively, even if it can be construed that Gramm Leach Bliley and Exemption 3 was properly invoked by the defendant, the act does not protect the withheld records pursuant to Exemption 3 of the FOIA.

Generally, the privacy protections of Gramm Leach Bliley protect the disclosure of certain financial information from the financial institutions that maintain the information or any nonaffiliated third parties this information is sent to by the financial institution.  15 U.S.C. § 6801-6809.

Initially, it is important to note that the privacy protections of Gramm Leach Bliley only extend to records of individuals, not to records of businesses such as corporations.  15 U.S.C. § 6809(9).  Thus, the only records at issue that could even be possibly covered under the provisions of Gramm Leach Bliley are records of individual investors that are on the Unclaimed Funds List.  However, HUD has not even established that Exemption 3 allows for the withholding of responsive records of individual under the provisions of Gramm Leach Bliley.[1]

---

[1] Defendant's brief cites 15 U.S.C. § 6801(c) as the exception that permits disclosure to Ginnie Mae, and then quotes 15 U.S.C. § 6802(c), which is the limits on reuse of information.  <u>See</u> Defendant's Memorandum at 6.  There is no 15 U.S.C. § 6801(c); 15 U.S.C. § 6802(e) provides the general exceptions to the financials institution obligation with respect to disclosures of financial information.

When institutions set up accounts with its clients or at various times during the institutions relationship with the client, the institution must send a privacy notice to the client that lets the client know what type of the client's financial information will be shared with other institutions. 15 U.S.C. § 6802(a). Individuals may opt out of the institutions sharing policy and ask that their information not be shared with others. 15 U.S.C. § 6802(b). Information that is received by nonaffiliated third parties must be treated the same as the financial institution says it will be treated in its privacy notice. 15 U.S.C. § 6802(c). Nonaffiliated third parties are defined as "any entity that is not an affiliate of, or related by common ownership or affiliated by corporate control with, the financial institution, but does not include a joint employee of such institution." 15 U.S.C. § 6809(5).

The privacy protections of Gramm Leach Bliley apply only to financial institutions. See Lacerte Software Corp. v. Professional Tax Services, et al., 2006 U.S. Dist. Lexis 12779 at *3 (N.D. Tex. Jan. 6, 2006). Further, it appears that the rule of non affiliated third parties also doesn't apply to the government as this rule was made to make other commercial institutions live under the same disclosure policies as the financial institutions that the information came from originally. 15 U.S.C. § 6802(c). As, defendant has not established that it meets the definition of a nonaffiliated third party under Gramm Leach Bliley, it hasn't established that it has to live by the rules that apply to non-affiliated third parties.

Further, even if defendant can be construed as a nonaffiliated third party under Gramm Leach Bliley, it hasn't established that the material plaintiff seeks is financial information that may not be released under the Gramm Leach Bliley. For a disclosure to

be prohibited, the terms of the disclosure, except in certain situations, must first be made in the financial institutions privacy notice to the consumer.  15 U.S.C. § 6802(a). Defendant does not attest to have knowledge that of any of the financial institutions privacy notices to consumers in this case dealt with any disclosure concerning unclaimed funds, nor does the government explain how the disclosure of unclaimed funds information is an exception to the disclosure rule.  Therefore, as defendant has not established that this disclosure is prohibited pursuant to Gramm Leach Bliley, it has not established that this is an Exemption 3 statute, and the disclosure of this information is not prohibited by exemption 3 of the FOIA.[2]

## II.  EXEMPTION 4 DOES NOT APPLY TO THE WITHHELD RECORDS

Defendant next claims that Exemption 4 of the FOIA allows HUD to withhold the responsive records.  Exemption 4 of the FOIA allows for the protection of "trade secrets or commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).

Defendant asserts that this information is commercial or financial information obtained from a person that is privileged or confidential.  Defendant's Motion at 7-14. However, defendant has failed to establish that this information is confidential.[3]

The FOIA allows for material that was required to be submitted to the government (as in the present case), to be considered confidential when the government

---

[2] Furthermore, for Gramm Leach Bliley to be construed as an Exemption 3 statute, an agency would have to establish knowledge of the underlying privacy notice issued by all of the financial institutions who sent the information that ultimately resulted in the information maintained by the government.

[3] Plaintiff does not contest that this information is commercial or financial information obtained by a person.  Defendant does not assert that the information is privileged.

6

can establish that disclosure is "likely either '(1) to impair the Government's ability to obtain necessary information in the future; (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" <u>National Parks and Conservation Ass'n v. Morton</u>, 498 F.2d 765, 770 (D.C. Cir. 1974); <u>Critical Mass Energy Project v. NRC</u>, 975 F.2d 871, 880 (D.C. Cir. 1992)(en banc). A third way to establish that the material is confidential is where its release would impair government interests such as compliance and program effectiveness. <u>National Parks</u>, 498 F.2d at 770 n.17. Defendant has not established, under any of these tests, that the responsive material is "confidential" for purposes of FOIA Exemption 4.

Initially, defendant claims that "at least one Court has held that Exemption 4 is appropriate to withhold the type of information sought by plaintiff. <u>See</u> <u>Clarke v. Dept. of the Treasury</u>, No. 84-1873, 1986 WL 1234 (E.D. Pa. Jan. 28, 1986)." Plaintiff's Memorandum at 6-7. <u>Clarke</u> does not stand for the position that the type of information sought by plaintiff may be withheld pursuant to FOIA Exemption 4. In <u>Clarke</u>, the plaintiff sought information on owners of Flower Bonds issued by the United States Department of the Treasury. <u>Clarke</u> at *1. The Court ultimately found that this information was confidential under the provisions of FOIA Exemption 4 because the Treasury regulations stated that the information sought would be held confidential by the federal government and the legend on the face of the bonds referenced the confidentiality regulations. <u>Id.</u> at *2-3. Thus, the situation in the case at hand is not similar to that in <u>Clarke</u>, as defendant has not established that any specific statements that the sought after information would be held confidential by anyone, including the federal government.

7

Next, defendant asserts that the release of this information would cause substantial harm to the competitive position from those whom the information was obtained. Defendant's Motion at 9-11. However, there is nothing on the record from any submitter of information that asserts that substantial harm will occur to the submitters of the information. Executive Order 12,600 requires that submitters of information be notified of FOIA requests with limited exceptions. 3 C.F.R. 235 (1988). One of the exceptions is where, as here, an agency determines, on its own, that the information should not be disclosed. Id. As defendant has made the decision that this information should not be disclosed, it become its responsibility to establish how the release of the responsive material would cause substantial harm to the submitters. Lion Raisins v. USDA, 354 F.3d 1072, 1080 (9th Cir. 2004); 5 U.S.C. § 552(a)(4)(B). Defendant attempts to do this by presenting the Declaration of Theodore Foster, a Senior Vice President of Ginnie Mae.

The Foster declaration does not establish that the submitters will suffer competitive harm if the material is released. Defendant cites Lion Raisins for the proposition that a declaration from agency personnel is enough to establish that submitters will incur this competitive harm. Defendant's Memorandum at 10. However, Lion Raisins actually demonstrates that the Foster Declaration is not sufficient to establish this competitive harm. In Lion Raisins, the declarant was found to be "very familiar" with the underlying industry and had been in "almost daily contact" with the submitters for a period of eight years. Id. at 1080. In this case, Foster has not shown this expertise or contact with the submitters of the information. Foster merely declares that he has been employed as a government bureaucrat with Ginnie Mae since 1989. Foster

8

Decl., ¶ 1.  Quite simply, at no point in his declaration does Foster attest to any contact with submitters of this information in any capacity.  Furthermore, in stating his opinion that the competitive harm would come to the submitters with the release of the information, Foster does not state what, if anything, his opinions are based on.  Id., ¶¶ 13-17.

For example, defendant claims that this is not the type of information a submitter would give to a competitor.  Defendant's Memorandum at 12.  However, this is not ever explicitly stated in the Foster Declaration, nor does Foster state that he has any knowledge of what the securities industries releases to a competitor in any instance.

The Ginnie Mae Guide ("Guide") referenced in the Foster Declaration, ¶¶7-8 does not speak to the issue of what the government can or cannot do with the information it receives from those responsible on reporting unclaimed funds or any interests submitters have in this information.  The Guide merely informs issuers of the obligations that occur when payments to security holders can not be delivered for a period of six months.  Ginnie Mae Guide, Chapter 15(C), located at

http://www.ginniemae.gov/guide/pdf/chap15.pdf, (last visited May 2, 2007).

Thus, as Foster's opinions are merely speculative, and not based on personal knowledge, they do not establish any competitive harm to the submitters of this information.  See Fed Rules of Civ. Procedure 56(e).

Defendant next argues that disclosure of the requested material would impair Ginnie Mae's ability to fulfill its statutory purpose. According to Defendant, the release of this information would hurt Ginnie Mae's ability to raise funds available to available to make real estate loans.  Defendant's Memorandum at 12-14.  However, many of the

tenuous harms defendant claims could incur from the release of this information could arguably already take place without any release of this information, and could be cured by the government agency regardless of this claim.  To summarize, defendant claims that investors won't purchase Ginnie Mae mortgage backed securities if they know that the information in the unclaimed funds database is released, they will instead buy competitors mortgage backed securities because the competitors have a system in which payments are made in electronic form which drastically reduces the amount of unclaimed funds.  Foster Decl., ¶¶ 11, 12, 16, 18.

Initially, it should be noted that defendant does not state why Ginnie Mae, if they have a payment system that is inferior from the electronic payment system set up by its competitors, can not change its own system.  Further, it is already known that Ginnie Mae has what it itself considers to be an inferior payment system, thus, no harm can truly come from the release of the information that comes from the existing payment system.

Further, the argument that the release of this information could be announced by the media is also misplaced and not supported by the facts.  As discussed above, the harms caused by unclaimed funds created by the existing payment system already exists. The fact that Ginnie Mae mortgage backed securities are backed by the full faith and credit of the U.S. Government, as demonstrated by the government itself, see id. at ¶ 17, is a huge plus to this program.  Thus, it is not logically conceivable that media coverage will occur and if it does, no amount of "media" coverage could have "devastating harm" to Ginnie Mae, especially in light of the fact that Ginnie Mae funds are backed by the full faith and credit of the federal government.

Additionally, Ginnie Mae's competitors have issues of their own with unclaimed funds that neutralize Ginnie Mae's arguments about the harm to the Ginnie Mae program with the release of this information.  Both Fannie Mae and Freddie Mac information have unclaimed funds that revert to the states under applicable escheat laws.  See www.freddiemac.com/mbs/docs/class_a_taxable_oc_9_1_05.pdf at 38 (last visited May 23, 2007); www.fanniemae.com/markets/debt/pdf/offering_notes_032107.pdf at 27 (last visited May 23, 2007).  State escheat laws require that unclaimed property be turned over to the State, and States then generally allow individuals to determine if the state holds the individuals unclaimed funds.  As an example, Pennsylvania's escheat law is found at 72 P.S. §§ 1301.1-1301.29 and the state has an unclaimed funds website, which can be found at www.patreasury.org/search.htm. (last visited May 23, 2007).  Any of defendant's competitors' unclaimed funds that revert to Pennsylvania would be publicly available on this site.  Thus, using the Government's own analysis, it is logical that investors would find the information about Freddie Mac and Fannie Mae and its relation to state escheat laws to be a negative toward defendant's competitors in making their decisions in which funds to invest in.  Thus, the public availability of unclaimed funds information is much different than the picture painted by defendant and the release of defendant's unclaimed fund information would not result in the harms alleged by defendant.

11

Defendant has not established any competitive harm in the release of this requested material, and therefore, Exemption 4 has not been established to withhold the responsive information.[4]

### III.  EXEMPTION 6 DOES NOT APPLY TO THE RESPONSIVE MATERIAL

In determining whether records concerning individuals may be withheld pursuant to FOIA Exemption 6, the privacy interests of the individuals must be balanced against the public interest in disclosure.  Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 755 (1989).  The government claims that the privacy interests of the security holders in their financial information outweighs any public interest in disclosure of this information.  Defendant's Memorandum at 15-18.

However, in Lepelletier v. FDIC, 164 F.3d 37 (D.C. Cir. 1999), the Court of Appeals for the D.C. Circuit reviewed a case very similar to this one and found that this balancing formulation didn't apply where the FOIA request sought information about unclaimed funds owed to individuals.  Id. at 47-48.  The Court found that the "individuals whom the government seeks to protect have a clear interest in the release of the requested information. . .  the FOIA analysis under Exemption 6 must include consideration of any interest the individual might have in the release of the information, particularly when the individuals who are 'protected' under this exemption are likely unaware of the information that could benefit them."  Id.  The Court further stated that "it is overly paternalistic to insist upon protecting an individual's privacy interest when there is good

---

[4] The government attempts to state that the current subprime mortgage crisis, coupled with the release of this information, will harm Ginnie Mae.  Foster Declaration, ¶ 17. However, the government's reference of the subprime mortgage crisis is nothing more than a red herring as it doesn't have anything to do with the release of the responsive material.

reason to believe that he or she would rather have both the publicity and the money than have neither. Accordingly, the list-of-names information sought by Lepelletier may be released under FOIA." Id. at 48.

Further, it has been determined that the public interest in disclosure of HUD unclaimed funds that it held for FHA mortgage holders outweighs the privacy interests of those individuals once HUD no longer actually searches for these individuals. See Aronson v. U.S. Dep't of Housing & Urban Dev., 822 F.2d 182, 188 (1st Cir. 1987); Farnum v. U.S. Dep't of Housing & Urban Dev., 710 F. Supp. 1129, 1136 (E.D. Mich. 1988) (holding that unclaimed fund information, held after the second year when HUD no longer searching for owners, should be disclosed)[5]. Finally, HUD now makes this information public on a searchable database where it is possible to find the names of those owed refunds and other identifiable information. See www.hud.gov/offices/hsg/comp/refunds/index.cfm (last visited May 9, 2007).

It should also be noted that plaintiff has informed defendant, on numerous occasions of the Lepelletier decision in his original FOIA request and in his administrative appeal. See Exhibits A and D attached herein. Defendant has not addressed this issue at any point. Thus, defendant has had ample opportunity to brief this point in its motion for summary judgment and has simply ignored it.

---

[5] While the decision in Aronson was found to be releasable, a district court in Hawaii found that because of Reporter's Committee v. Freedom of the Press, decided after Aronson, the information should be exempt. See Shoettle v. Kemp, 733 F. Supp 1395 (D. Haw. 1990). However, the original district court in Aronson followed the Circuit Court decision, post Reporter's Committee and agreed with the Farnum decision allowing for disclosure of the documents after a two year period. Aronson v. U.S. Dep't of Housing & Urban Dev., 1991 U.S. LEXIS 9283, at *10 (D. Mass. April 29, 1991).

Thus, as shown above, the names and identifying information of the individuals who are owed unclaimed funds are not withholdable pursuant to FOIA Exemption 6. This information, as well as all the other requested information in the Unclaimed Funds List should be released to plaintiff.

**Conclusion**

For the foregoing reasons, defendant's motion for summary judgment should be denied and plaintiff's cross-motion for summary judgment should be granted.

Respectfully submitted,


_____/S/_____
Scott A. Hodes,
(D.C. Bar No. 430375)
P.O. Box 42002
Washington, D.C.  20015
Phone (301) 404-0502
Fax (301) 738-2128

Plaintiff

Dated:  May 25, 2007

14

# EXHIBIT A

# HODES v. HUD

# No. 07-0161-CKK

**SCOTT A. HODES, ATTORNEY AT LAW**
POST OFFICE BOX 42002
WASHINGTON, DC 20015
WWW.INFOPRIVACYLAW.COM

MEMBER DC AND MD BARS

INFOPRIVACYLAW@YAHOO.COM

(301) 404-0502

December 14, 2004

Mr. Richard Washington
Acting Assistant General Counsel
Department of Housing and Urban Development
Room 10248
451 7th Street, S.W.
Washington, D.C. 20410

VIA FACSIMILE

Dear Mr. Washington:

This is a request for information under the Freedom of Information Act, 5 U.S.C. § 552.

I request a copy of the payee names, dollar amounts; check numbers issue dates and payee addresses contained in the Ginnie Mae Unclaimed Funds System (UFS):

I will pay all reasonable duplication fees.

I believe that the public interest in this information is the return of these monies to those that rightfully own them. By putting this money back into the economy, it will help fuel growth in the U.S. economy, and create jobs. This public interest outweighs any privacy interest these payees may have.

Please note that any privacy interests of these individuals is also outweighed by their countervailing pecuniary interest in recovering funds owed to them. Lepellitier v. FDIC, 164 F.3d 37 (D.C. Cir. 1999). Furthermore, where these monies are owed to corporate entities, there is no personal privacy to these payees. Thus, the public interest outweighs any privacy interest in this information, and this information should be released to me.

Thank you for your time and consideration. Feel free to contact me at your convenience if you have any questions concerning this request.

Sincerely,

Scott A. Hodes

# EXHIBIT B

# HODES V. HUD

# No. 07-0161-CKK



**0U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-0600

OFFICE OF GENERAL COUNSEL
Mr. Scott A. Hodes
Attorney at Law
Post Office Box 42002
Washington, DC 20015

APR 1 8 2005

RE:    Freedom of Information Act Request
       FOIA Control No.: FI-416811

Dear Mr. Hodes

     This letter is in response to your Freedom of Information Act (FOIA) request dated December 14, 2004, in that request you asked for a copy of the payee names, dollar amounts, check numbers, issue dates and payee addresses contained in the Ginnie Mae Unclaimed Funds Systems (UFS).

     When responding to a FOIA request, HUD searches for responsive documents existing up to the date the request is received in the Department's FOIA Division. Your request was received on December 14, 2004.

     A search of Headquarters' records by knowledgeable staff failed to locate any documents at HUD Headquarters that would be responsive to your request. Please be advised that your request is denied pursuant to FOIA Exemptions 4 and 6. Exemption 4 of the FOIA, ". . . protects 'trade secrets and commercial or financial information obtained from a person (that is) privileged or confidential. Exemption 6 protects personal privacy interests as it relates to "personnel and medical files and similar files". Additionally, federal court decisions have set a precedent in similar cases for the release of personal financial information in that the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy".

     Holly Salamido, Assistant General Counsel, FOIA Division, is the official responsible for this determination. You may appeal this determination within 30 days from the date of this letter. Your appeal should include copies of your original request and this response, as well as a discussion of the reasons supporting your appeal. The envelope should be plainly marked to indicate that it contains a FOIA appeal. If you should decide to appeal, please send your appeal to:

     U.S. Department of Housing and Urban Development
     Freedom of Information Act Appeal
     Assistant General Counsel for Procurement and
     Administrative Law
     451 Seventh Street, SW, Room 10180
     Washington, DC 20410-0500

Telephone: (202) 708-0622

For your information, your FOIA request, including your identity and any information made available, is releasable to the public under subsequent FOIA requests. In responding to these requests, the Department does not release personal privacy information such as home address, telephone number, or social security number, all of which are protected from disclosure under Exemption 6.

Thank you for your interest in the Department's policies and programs.

Sincerely,

Carole W. Wilson
Associate General Counsel
Office of Litigation

# EXHIBIT C

# HODES V. HUD

# No. 07-0161-CKK

**SCOTT A. HODES, ATTORNEY AT LAW**
POST OFFICE BOX 42002
WASHINGTON, DC 20015
WWW.INFOPRIVACYLAW.COM

MEMBER DC AND MD BARS

(301) 404-0502

INFOPRIVACYLAW@YAHOO.

June 8, 2005

U.S. Department of Housing and Urban Development
Freedom of Information Act Appeal
Assistant General Counsel for Procurement
 And Administrative Law
451 Seventh Street, S.W., Room 10180
Washington, D.C. 20410-0500

Dear Assistant General Counsel:

This is an appeal of the April 18, 2005 decision of Holly Salamido denying my December 14, 2004 request for information under the Freedom of Information Act, 5 U.S.C. § 552. The FOIA Control No. for this request is FI-416811. For your information, I did not receive the denial letter until June 7, 2005.

By letter dated December 14, 2004, I requested a copy of the payee names, dollar amounts; check numbers issue dates and payee addresses contained in the Ginnie Mae Unclaimed Funds System (UFS). A copy of my original request letter is attached.

By letter dated April 18, 2004 (but not received until June 7, 2005) I received a letter denying my request. Initially, the letter stated that "[a] search of Headquarters' records by knowledgeable staff failed to locate any documents at HUD Headquarters that would be responsive to your request." The letter than goes on to state that "...your request is denied pursuant to FOIA exemptions 4 and 6." A copy of the denial letter is attached.

Initially, I appeal the search for responsive records. Your agency, the Department of Housing and Urban Development ("HUD") is responsive for the Ginnie Mae program. As part of HUD's Ginnie Mae organization is a database known as the Ginnie Mae Unclaimed Funds System ("UFS"). My request was for records maintained within that system. How, Ms. Salamido and other unknown HUD employee's can deny that the records I seek can not be located is confusing as the records I seek are in the UFS. Initially, I ask that you please direct the FOIA office to search for and locate the records I seek in the UFS.

Next, I was told that the records, which can't be found by the FOIA Office, are exempt under the FOIA. If there are no records what is being withheld? As I believe records do indeed exist, I also appeal any withholding of them pursuant to exemptions 4 and 6 of the FOIA. Exemption 4 applies to Trade Secrets and Confidential Business Information. As I seek information about unclaimed funds, it is not at all clear to me, whose trade secrets or confidential business information is being protected. Logically, those with unclaimed funds would not claim or have any government agency or court authorize this information as a trade secret or confidential business information. Thus, I do not believe exemption 4 in any way could apply to the records I seek.

I also do not believe exemption 6 protects the records I seek. Some of the information I seek is not identifiable to a third party and therefore exemption 6 could not, in any way, apply. Further, as I seek information about unclaimed funds. I believe that the public interest in this information is the return of these monies to those that rightfully own them. By putting this money back into the economy, it will help fuel growth in the U.S. economy, and create jobs. This public interest outweighs any privacy interest these payees may have. Please note that any privacy interests of these individuals is also outweighed by their countervailing pecuniary interest in recovering funds owed to them. Lepelitier v. FDIC, 164 F.3d 37 (D.C. Cir. 1999). Furthermore, where these monies are owed to corporate entities, there is no personal privacy to these payees. Thus, the public interest outweighs any privacy interest in this

• Page 2

June 8, 2005

information, and this information should be released to me, and exemption 6 does not therefore apply to these records. Thus, I ask that once the records are located, you instruct the FOIA Office to release them to me.

Thank you for your time and consideration. Feel free to contact me at your convenience if you have any questions concerning this request.

Sincerely,

Scott A. Hodes

# EXHIBIT D

# HODES V. HUD

# No. 07-0161-CKK



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-0500

OFFICE OF GENERAL COUNSEL

MAR 1 7 2006

Scott A. Hodes, Esq.
P.O. Box 42002
Washington, DC 20015

> Re:   Freedom of Information Act Appeal
>       FOIA Control No.: FI-416811

Dear Mr. Hodes:

This letter responds to your Freedom of Information Act (FOIA) appeal dated June 8, 2005. By facsimile dated December 14, 2004, you submitted a FOIA request for "a copy of the payee names, dollar amounts, check numbers, issue dates and payee addresses contained in Ginnie Mae's Unclaimed Funds System (UFS)." By letter dated April 18, 2005, HUD denied your request stating both that "staff failed to locate any documents . . . responsive to your request" and that "your request is denied pursuant to FOIA Exemptions 4 and 6." On appeal, you raise three issues, which will be discussed in turn. For the reasons detailed below, I have decided to deny your FOIA appeal.

First, you contend that HUD conducted an inadequate search for responsive documents because the information you requested is contained in a HUD database within Ginnie Mae's Unclaimed Funds System ("UFS"). Upon a reasonable search conducted pursuant to your appeal, I have determined that the HUD database that you reference in your appeal letter does contain the requested information.

Second, you assert that the agency improperly withheld the requested "payee names, dollar amounts, check numbers, issue dates and payee addresses" based on FOIA Exemption 4. This exemption protects information that is both "commercial or financial" and "confidential." 5 U.S.C. § 552(b)(4). It encompasses situations where disclosure of such information would likely cause the submitter competitive harm or impair the Government's ability to obtain necessary information in the future. See National Parks and Conservation Association v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974). In this case, you seek information concerning unclaimed funds, including information concerning the parties who are entitled to these funds. This information is financial and is considered "confidential," as this statutory term is interpreted, because its disclosure would likely impair the Government's ability to obtain this necessary information in the future. Accordingly, I find that this information was properly withheld pursuant to FOIA Exemption 4.

Third, you challenge the agency's decision to withhold personal information relating to payees contained in Ginnie Mae's UFS based on FOIA Exemption 6. 5 U.S.C. § 552(b)(6). This exemption protects information identifiable to a specific individual within personnel, medical and "similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy." Id. When FOIA Exemption 6 is applicable to certain information, the requester carries the burden of establishing that disclosure of such information would serve the public interest in

shedding light on an agency's performance of its statutory duties. See Carter v. United States Dep't of Commerce, 830 F.2d 388, 391 nn.8 & 13 (D.C. Cir. 1987); United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989). Should agency disclosure of personal information concerning a particular individual serve that public interest, the decision to disclose must be balanced against the privacy rights involved so as to avoid a "clearly unwarranted invasion of personal privacy." Dep't of Air Force v. Rose, 425 U.S. 352 (1975); see also Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982).

While all the information you requested is protected by FOIA Exemption 4, certain information you have requested is additionally protected under FOIA Exemption 6. In contrast to information identifiable to corporate entities, which are not afforded protection for personal privacy interests under FOIA Exemption 6, see Sims v. CIA, 642 F.2d 562, 572 n.47 (D.C. Cir. 1980), the payee names and addresses, dollar amounts, check numbers and issue dates identifiable to specific individuals are protected under FOIA Exemption 6. These payees have a privacy interest in not releasing this personally identifiable information to FOIA requesters. This privacy interest in non-disclosure is not outweighed by the public interest in shedding light on HUD's return of these monies to individual payees. Therefore, I find that this information was properly withheld pursuant to FOIA Exemption 6.

Judicial review of my determination is available under 5 U.S.C. § 552(a)(4) and may be had in the United States District Court for the district in which you reside or maintain your principal place of business, in the District of Columbia, or in the district where the records sought are located.

Sincerely,

George L. Weidenfeller
Deputy General Counsel

cc: FOIA Division

# EXHIBIT E

# HODES V. HUD

# No. 07-0161-CKK

SCOTT A. HODES, ATTORNEY AT LAW
POST OFFICE BOX 42002
WASHINGTON, DC 20015
WWW.INFOPRIVACYLAW.COM

MEMBER DC AND MD BARS

April 4, 2006

(301) 404-0502

INFOPRIVACYLAW@YAHOO.COM

Mr. George L. Weidenfeller
Deputy General Counsel
Office of General Counsel
U.S. Housing and Urban Development
451 7th Street, S.W.
Washington, D.C. 20410-0500

RE: FI-416811

Dear Mr. Weidenfeller:

I have received your denial of my appeal on the above captioned FOIA request. Your denial letter was unclear as to who the submitters of information that has been withheld from me pursuant to FOIA exemption 4. Thus, I seek to know who the submitters of the information that has been withheld from me pursuant to FOIA exemption 4 are. Are they investors, brokerage firms or some other types of entities? If this information is privacy protected because these submitters are individuals, please let me know if these submitters are investors in Ginnie Mae mortgages or other entities. Additionally, please outline to me the process in which this information is submitted to your agency.

I do not seek to have to file litigation in this matter. However, the answers provided to me in your denial letter do not fully make sense pursuant to the FOIA and my understanding of Ginnie Mae's Unclaimed Funds System. By providing me answers of my above questions, litigation may quite possibly be averted. While I am aware that you are under no obligation to provide me further information, I am also aware that the information I seek is information that would have to be provided to me if I decided to file litigation in this matter. Therefore, answering my questions in this forum, which is within your discretion, would be a much less expensive option for you at this time.

Thank you in advance for your time and consideration. I look forward to hearing from you soon on these concerns as I hope we can reach an understanding on these matters.

Sincerely,

Scott A. Hodes

# EXHIBIT F

# HODES V. HUD

# No. 07-0161-CKK



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-0500

OFFICE OF GENERAL COUNSEL

Scott A. Hodes, Esq.                                        JUN 2 3 2006
P.O. Box 42002
Washington, DC 20015

> Re:    Freedom of Information Act Appeal
>        FOIA Control No.: FI-416811

Dear Mr. Hodes:

This responds to your letter dated April 4, 2006, which seeks clarification concerning HUD's response to your recent Freedom of Information Act (FOIA) appeal. By facsimile dated December 14, 2004, you submitted a FOIA request for a "a copy of the payee names, dollar amounts, check numbers, issue dates and payee addresses contained in Ginnie Mae's Unclaimed Funds System (UFS)." By letter dated April 18, 2005, HUD denied your request pursuant to FOIA Exemptions 4 and 6. 5 U.S.C. § 552 (b)(4) & (6). You appealed the agency determination that the requested information was properly withheld and, by letter dated March 17, 2006, I upheld the agency determination on appeal.

Personal information relating to individual payees of mortgage-backed security dividends was withheld based on FOIA Exemption 6 because these payees have a privacy interest in not releasing personally identifiable information to FOIA requesters. In your letter, you seek clarification on whether the "submitters" of the withheld information are individual investors or corporate investors. As stated in the FOIA appeal determination, information identifiable to specific individual investors was withheld. Additionally, you ask whether these "submitters" are "investors in Ginnie Mae mortgages or other entities." They are investors in Ginnie Mae mortgage-backed securities.

I hope that the information I have provided to you adequately addresses your request for clarification of my FOIA appeal decision.

Sincerely,

George L. Weidenfeller
Deputy General Counsel