## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SCOTT A. HODES,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          No. 07-0161 (CKK)
                                         )
U.S. DEPARTMENT OF HOUSING               )
AND URBAN DEVELOPMENT,                   )
                                         )
                    Defendant.           )
_____)

## DEFENDANT'S CONSOLIDATED REPLY IN SUPPORT OF
## SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
## CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant Department of Housing and Urban Development, through counsel,

respectfully submits this Consolidated Reply in Support of Summary Judgment and Opposition

to Plaintiff's Cross-Motion for Summary Judgment.

### INTRODUCTION

This case concerns Plaintiff's attempt to use the Freedom of Information Act (FOIA) in

his quest to create money making opportunities for an unnamed Tracer client at the expense of

unsuspecting investors in Ginnie Mae securities.  Investors typically receive returns on their

investments monthly from the issuers of Ginnie Mae securities.  However, when issuers find

themselves unable to effectuate payments to an individual investor over a period of six months,

the funds due that individual investor are transferred from the issuer's account to Ginnie Mae's

Central Paying and Transferring Agent (CPTA) which sends the funds to Ginnie Mae's accounts

at the Department of Treasury (Treasury).  The issuer, not Ginnie Mae, has the obligation to

locate investors owed money.  Nevertheless, in the interest of program integrity, Ginnie Mae has

implemented a program to locate investors with unclaimed funds.  Second Foster Decl. ¶ 17.

When Ginnie Mae receives unpaid funds from the CPTA, it takes action to locate the investors in order to assist the issuers in making the payments due.  When the issuer locates an investor and the investor confirms her eligibility for the payments, the full amount of the funds Ginnie Mae is holding for that investor is returned to the issuer, which pays the investor without any charge for Ginnie Mae's or the issuer's efforts to locate and pay the investor.  However, when a tracer locates a person due a refund from a governmental agency such as Ginnie Mae, that tracer will only assist the person in obtaining their fund in exchange for a fee, which is typically 30-40 percent of the refund due.  Second Foster Decl.  ¶ 2.  The obvious disadvantage to the investor is that while they could have received 100 percent of their refund directly from the issuer, they only receive approximately 60-70 percent when a tracer is involved.  It is Ginnie Mae's goal to ensure that *every Investor in Ginnie Mae mortgage-backed securities receives 100 percent of the return on their investments*.  Id. ¶ 3.  When tracers unnecessarily insert themselves into the refund process, they defeat Ginnie Mae's goal of returning to investors 100 percent of their return and in effect divert a substantial amount of investor funds to themselves.  Id. ¶ 4.

Here, Plaintiff, presumably representing an unnamed tracer, filed a FOIA request seeking, "a copy of the payee names, dollar amounts, check numbers, issue dates and payee addresses contained in Ginnie Mae's Unclaimed Funds System (UFS)."  Complaint ¶ 4.

## FACTUAL ERRORS IN THE OPPOSITION/CROSS MOTION

Plaintiff's Opposition/Cross Motion (Opposition) contains numerous misstatements of fact, unsupported assertions and illogical and/or confusing conclusions to which the Government responds below.

Throughout his Statement of Material Facts Not In Genuine Dispute (Fact Statement), Plaintiff, without any citation to the record, asserts that the factual statements contained in

Theodore Foster's Declaration are "opinion … without any factual substantiation."  Fact Statement ¶¶ 13-17, 20.  However, a requester may not rebut agency affidavits with purely speculative allegations.  *Carney v. Department of Justice*, 19 F.3d 807, 813 (2d Cir. 1994); *Maynard v. CIA*, 986 F.2d 547, 559-560 (1st Cir. 1993); *SafeCard Servs.  v. SEC*, 926 F.2d 1197, 1200 (D.C.Cir. 1991).

Mr. Foster has been a Senior Vice President at Ginnie Mae for five years.  Foster Decl. ¶ 1.  He has been employed at Ginnie Mae for a total of 18 years.  *Id*.   He is personally responsible for oversight of all Ginnie Mae program activities, including the performance of Ginnie Mae's guaranty obligations and the compliance of entities (such as issuers) participating in Ginnie Mae programs.  *Id.*  Mr. Foster is very familiar with the underlying mortgage-backed securities industry and has been in almost daily contact with issuers/submitters of the information Plaintiff seeks throughout many years.  Second Foster Decl. ¶ 5.  The opinions in Mr. Foster's First Declaration related to competitive harm to issuers from the unwarranted disclosure of personal privacy information of investors is based upon his 18 years experience in the day to day operations of Ginnie Mae, his 5 years experience as a Senior Vice President at Ginnie Mae, his experience as the Director of Issuer Management at Ginnie Mae and his intimate knowledge of the mortgage-backed securities industry.  Second Foster Decl. ¶ 6.  Plaintiff's unsupported, speculative challenges to Mr. Foster's expertise are insufficient to rebut Mr. Foster's declarations.  *Carney*, 19 F.3d 807; 813, *Maynard*, 986 F.2d 547; 559-560, *SafeCard Servs.*, 926 F.2d 1197, 1200.

## ARGUMENT

### I.     Defendant Properly Invoked Exemption 3 as a Justification for Withholding the Requested Documents

Title 5 Section 552(b)(3), United States Code allows for the withholding of information "specifically exempted from disclosure by statute (other than section 552(b) of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. 552(b)(3). Moreover, "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the *sole* issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980) (emphasis added).

### A.     Defendant Did Not Waive its Right to Use Exemption 3

Ginnie Mae did not cite Exemption 3 in its letter to Plaintiff in response to Plaintiff's FOIA request.  Nor did HUD cite Exemption 3 in upholding the denial of Plaintiff's FOIA request.  Ginnie Mae did, however, invoke Exemption 3 in its Motion for Summary Judgment as an additional justification for withholding the materials sought by Plaintiff.

Plaintiff incorrectly asserts in his Opposition that because Exemption 3 was not mentioned in the administrative record, it has not been properly invoked by Ginnie Mae. Opposition  p. 3.  In support of this erroneous proposition Plaintiff cites *Ryan v. Dep't. of Justice*, 617 F.2d 781, 792 (1980) n.38.  However, *Ryan* stands for the proposition that the Defendant may not raise an exemption in the first instance at the appellate level.  Rather, Defendant must raise the exemption by identifying it at the district court level and by demonstrating that the

exemption applies to the documents in question.  *Id*. at 792 (citing *Jordan v. United States Dep't. of Justice*, 192 U.S.App.D.C. at 170, 591 F.2d at 779 (1978)).  This Ginnie Mae has done.  In *Ryan* however, the Defendant made only one reference to the Exemption at the district court level and it was in a footnote which indicated that "for example" Exemption 6 might apply. *Ryan v. Dep't. of Justice*, 617 F.2d 781, 792.  The Court was troubled by the fact that this oblique reference to Exemption 6 in a footnote did not present the exemption in a manner in which the district court could rule on it.  *Id.*  Here, Ginnie Mae raised Exemption 3 at the district court level in its Motion for Summary Judgment along with compelling legal analysis such as would enable the Court to rule on the issue.  Because Ginnie Mae has fully briefed the applicability of Exemption 3 to the withheld documents, that argument is properly before the Court.  *Id.*

**B.**     **The Gramm Leach Bliley Act Protects the Documents Plaintiff Seeks**

Gramm Leach Bliley provides:

> Except as otherwise provided in this subtitle, a nonaffiliated third party that receives from a financial institution nonpublic personal information under this section shall not, directly or through an affiliate of such receiving third party, disclose such information to any other person that is a nonaffiliated third party of both the financial institution and such receiving third party, unless such disclosure would be lawful if made directly to such other person by the financial institution.[1]

**1.**     **Ginnie Mae is a Nonaffiliated Third Party within the meaning of Gramm Leach Bliley**

A nonaffiliated third party is defined as any entity that is not an affiliate of, or related by common ownership or affiliated by corporate control with, the financial institution, but does not

---

[1] 15 U.S.C. § 6802(c).  In the Government's Motion for Summary Judgment, the citation for this section of Gramm Leach Bliley is incorrectly identified as 15 U.S.C. § 6801(c).  The correct citation is 15 U.S.C. § 6802(c).

include a joint employee of such institution.[2]  Ginnie Mae clearly meets the definition of nonaffiliated third party in that it has no common ownership with any of the financial institutions (issuers) supplying it with the personal privacy information of investors in Ginnie Mae's mortgage-backed securities.

Plaintiff incorrectly asserts that the privacy protections of Gramm Leach Bliley apply only to financial institutions despite the ***plain language*** of the statute.  Opposition p. 5.  For this proposition Plaintiff cites only *Lacerte Software Corporation v. Professional Tax Services*, an unreported case from the Northern District of Texas, 2006 U.S. Dist. Lexis 12779 at *3 (N.D. Tex. Jan. 6, 2006), which is not controlling here, particularly in light of the fact that the holding in *Lacerte* is contrary to the plain language of the statute.

Ginnie Mae is clearly a nonaffiliated third party bound by the non-disclosure mandate of Gramm Leach Bliley from the plain language of the statute.

**2.      The Requested Materials may not be Released under Gramm Leach Bliley**

Plaintiff, citing 15 U.S.C. § 6802(a), urges that "For a disclosure to be prohibited, the terms of the disclosure, except in certain situations, must first be made in the financial institution's privacy notice to the consumer."  Opposition pp. 5-6.   What 15 U.S.C. § 6802(a) actually says is:

> Except as otherwise provided in this subchapter, a financial institution may not, directly or through an affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title.

Defendant has properly invoked Exemption 3 to withhold personal privacy information of investors pursuant to Gramm Leach Bliley.  If Plaintiff wishes to make the argument that

---

[2] 15 U.S.C. § 6809(5).

Gramm Leach Bliley does not apply to the withheld documents because he somehow has knowledge of the disclosures that the various issuers provided to the yet unnamed investors, he is free to do so.  In the Opposition, however, Plaintiff turns logic on its head by arguing that Defendant is required to attest to the state of the issuers' disclosures.  This is nonsensical.  The Exemption has been properly invoked and Plaintiff has failed to logically refute that invocation.

## II.    Ginnie Mae Properly Withheld the Documents Pursuant To Exemption 4

Title 5 Section 552(b)(4), United States Code protects trade secrets and commercial or financial information obtained from a person that is privileged or confidential.  Here, Plaintiff requested a copy of the payee names, dollar amounts, check numbers, issue dates and payee addresses contained in Ginnie Mae's UFS.

As an initial matter, Plaintiff does not contest that the requested information is commercial or financial information obtained from a person.  Opposition, fn 3.  In his Opposition Plaintiff challenges only the confidential nature of payee names, dollar amounts, check numbers, issue dates and payee addresses contained in Ginnie Mae's UFS.  The leading case on the issue of confidentiality within the context of an Exemption 4 claim is *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974),[3] in which the Court established the following two-part test:

> To summarize, commercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects:  (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

498 F.2d 765 at 770.

---

[3] The Court, sitting en banc, declined to set aside the *National Parks* holding in *Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C. Cir. 1992).

These two principal Exemption 4 tests, which apply disjunctively, have often been referred to in subsequent cases as the "impairment prong" and the "competitive harm prong." Confidentiality may also be established by proving that its release would impair a government interest such as compliance and program effectiveness. *Id.*

## A. Release of the Withheld Documents Would Cause Competitive Harm to Issuers

The impairment prong is analyzed when information is voluntarily supplied to the government as a way of insuring the continued and full availability of information. *Critical Mass*, 975 F.2d at 878. This is not the case presented here. The requested information was submitted by issuers to Ginnie Mae involuntarily. Ginnie Mae's agreement with issuers of mortgage-backed securities requires issuers to submit to Ginnie Mae personal identifying information as to the security holder and the amount of payments owed whenever an issuer has been unable to effectuate payment to an individual investor for a period of six months. Foster Decl. ¶ 8.

Having established the involuntary nature of the submissions, the analysis turns to evaluating the potential harm to the competitive position of investors from whom the information was obtained. As a general proposition, Executive Order 12,600 requires agencies to notify submitters of records containing confidential commercial information whenever such records are requested through the FOIA. There are, however, exceptions to this broad requirement. Section 8(a) of Executive Order 12,600 provides that the notice requirements of the Order need not be followed if the agency determines that the information should not be disclosed. Where, as here, the agency makes the determination that the information should not be disclosed, the withholding agency should submit a declaration signed by a declarant who is very familiar with the industry at issue and who has had experience that put him in almost daily contact with it. *Lion Raisins,*

*Inc. v. USDA*, 354 F.3d 1072, 1080 (9th Cir. 2004).  Such qualifications will lend considerable weight to the declarant's testimony.  *Id*.

In support of its Motion for Summary Judgment, Ginnie Mae submitted a lengthy declaration signed by Theodore Foster, a Senior Vice President at Ginnie Mae.  In support of its Reply and Opposition to Plaintiff's Cross Motion for Summary Judgment, Ginnie Mae has submitted a Second Declaration of Theodore Foster.  In his Second Declaration, Mr. Foster confirms that he is indeed ***very familiar with the mortgage-backed securities industry***, having been in Ginnie Mae's employ for 18 years, five of which have been in the capacity of Senior Vice President.  Second Foster Decl. ¶ 7.  In this role, Mr. Foster not only has direct, almost daily contact with Ginnie Mae issuers, he frequently attends industry-wide conventions where he is invited to speak as an expert on subjects of interest to the mortgage-backed securities industry.  Second Foster Decl. ¶ 8.  Mr. Foster has stated explicitly that the requested personal privacy information Plaintiff seeks is not the type of information an issuer of mortgage-backed securities would ever release to a competitor.  Second Foster Decl. ¶ 9.  This opinion is based upon Mr. Foster's extensive day-to-day contact with such issuers over the course of many years.  Second Foster Decl. ¶ 10.

The Court of Appeals for the Ninth Circuit recently upheld a competitive harm determination justified solely by an agency declarant similar to Mr. Foster because that declarant, like Mr. Foster, was very familiar with the industry at issue and had experience that put him in almost daily contact with it.  *Lion Raisins*, 354 F.3d at 1080.  The *Lion Raisens* Court found that even more important than the declarant's familiarity with the industry and almost daily contact was his detailed and specific descriptions of the withheld information, including the ways in which the information could be turned to a competitive advantage.  *Id*.  Mr. Foster

9

explained in great detail in his first Declaration the ways in which Issuers could be competitively harmed by the release of the requested information.  Foster Decl. ¶¶ 15, 16.

Plaintiff attempts to denigrate Mr. Foster's experience by saying that Mr. Foster has merely been employed as a government bureaucrat since 1989.[4]  Opposition p. 8.  Mr. Foster is no mere bureaucrat.  He is a Senior Vice President at Ginnie Mae, one of the world's largest guarantors of mortgage-backed securities.  Second Foster Decl. ¶ 11.  During Mr. Foster's entire tenure as Senior Vice President, Ginnie Mae has operated at no cost to the government.  Second Foster Decl. ¶ 12.  As a result of Mr. Foster's intimate knowledge of the mortgage-backed securities industry and his near daily contact with the issuers which provided Ginnie Mae with the personal privacy information Plaintiff now seeks, Mr. Foster is uniquely qualified to make the Section 8(a) determination under Executive Order 12,600 that the requested information should not be disclosed.  Plaintiff has failed to cite any evidence of record to refute Mr. Foster's indisputable qualifications to make this determination.

**B.    Disclosure Would Impair Ginnie Mae's Ability to Fulfill Its Statutory Purpose**

Information is also confidential for purposes of Exemption 4 if its release would impair an agency's ability to carry out its statutory purposes.  *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000); *Comstock International (U.S.A.), Inc. v. Export-Import Bank of the United States*, 464 F. Supp. 804, 808 (D.D.C. 1979) (because commercial banks and borrowers were reluctant to negotiate loan agreements with the agency absent assurances of confidentiality, disclosure would interfere with the agency's ability to promote U.S. exports).  To establish impairment to an agency and thereby justify the finding that the requested information

---

[4]   Plaintiff, a former government servant himself, should take more care in valuing and respecting the contributions to this nation made by public servants, especially those that can make significantly higher salaries in the private sector.

is "confidential" under Exemption 4, an agency need only demonstrate that disclosure would impair one of its programs. The agency is in the best position to determine the effect disclosure would have on its operations. *9 to 5 Organization for Women Office Workers v. Board of Governors of the Federal Reserve System*, 721 F.2d 1, 10 (1st Cir. 1983) ("In the absence of bad faith or abuse of discretion, it is normally not for a court to substitute its judgment … in determining what otherwise appropriate and relevant data is particularly helpful in fulfilling the agency's statutory responsibilities, or in defining the most effective means of acquiring it.").

Ginnie Mae has as a primary mission the goal of increasing funds available for the purchase of low and moderate income housing. Foster Decl. ¶ 17. One way in which Ginnie Mae fulfills this mission is by attracting future investors in its mortgage-backed securities. *Id.* If the requested information is released, it is likely to impair Ginnie Mae issuers' ability to attract future investors, resulting in less available capital for mortgagees making FHA-insured loans and reduced access to mortgage funds on the part of first time and minority homebuyers. *Id.* Mr. Foster, a Senior Vice President at Ginnie Mae, has determined that release of the requested information would impair one of its primary missions. Foster Decl. ¶ 17. Because there has been absolutely no showing of arbitrariness on Mr. Foster's part, this Court should not substitute its judgment for that of Ginnie Mae. *9 to 5 Organization for Women Office Workers*, 721 F.2d at 10.

At least one court has determined in a case with strikingly similar facts that personal privacy information regarding bond investors was confidential under Exemption 4. *Clark v. United States Dept. of the Treasury, et al.*, No. 84-1873, 1986 U.S. Dist. Lexis 29989 (E.D. Pa. Jan. 28, 1986). In *Clark* the requester sought the names and addresses of all registered, institutional owners of Flower bonds, the dollar amount, coupon and maturity date for the bonds

held by each owner.  The Treasury Department refused to produce the requested information

citing Exemption 4, reasoning that release of the information would violate the purchasers'

expectation of confidentiality and harm the Treasury Department's ability to issue bonds in the

future.  *Id*.  The court observed that the disclosure of bond holding data would threaten to

eliminate or reduce the pool of money from which the Government borrows.  Id.  Finding the

requested information confidential within the meaning of Exemption 4, the court granted the

Treasury Department's Motion for Summary Judgment.  *Id*.  Accordingly, it is apparent that

Exemption 4 applies in this case.

### III.    Ginnie Mae Properly Withheld the Documents Pursuant To Exemption 6

Section 552(b)(6) of Title 5, United States Code, exempts from disclosure information

contained in "personnel and medical files and similar files the disclosure of which would

constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. §552(b)(6).

### A.    The Requested Information Falls within the Category of "personnel and medical and similar files"

The Supreme Court has held that Congress intended the term "similar files" to be

interpreted broadly, rather than narrowly.  *United States Department of State v. Washington Post

Co*., 456 U.S. 595, 599-603 (1982) (citing H.R. Rep. No. 89-1497, at 11 (1966); S.Rep.No. 89-

813, at 9 (1965); S.Rep.No. 88-1219, at 14 (1964)).  The court made clear that all information

that "applies to a particular individual" meets the threshold requirement for Exemption 6

protection.  *Id*.  In this case the records sought by Plaintiff are "a copy of the payee names, dollar

amounts, check numbers, issue dates and payee addresses contained in Ginnie Mae's UFS."

Opposition p. 1.  In its Opposition Plaintiff does not dispute the government's finding that the

records sought are "similar files" for purposes of the Exemption 6 analysis.

**B.    Disclosure of the requested records would constitute a clearly unwarranted invasion of personal privacy**

Having established that the withheld information meets the above threshold requirement of Exemption 6, a determination must then be made as to whether disclosure would constitute a "clearly unwarranted invasion of personal privacy."  This requires a balancing of the public interest in disclosure against the individual privacy interest which would be invaded by release of the information.  *See, e.g.*, *NARA v. Favish*, 541 U.S. 157, 172 (2004); *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989)[5]; *Department of the Air Force v. Rose*, 425 U.S. 352, 372 (1976).  The limiting language, "clearly unwarranted invasion of personal privacy," strikes "a proper balance between protection of an individual's right of privacy and preservation of the public's right to government information by excluding those kinds of files the disclosure of which might harm the individual."  *Department of the Air Force v. Rose*, 425 U.S. 352, 372; *Lepelletier v. FDIC* 164 F.3d 37, 46 (D.C. Cir. 1999).[6]

The first step in assessing the propriety of information withheld under Exemption 6 requires an identification of the privacy interest at issue.  *See Reporters Committee*, 489 U.S. at 763.  In the usual case, the reviewing court assesses whether the release of the requested information would violate a recognized privacy interest of the subject of such information.  *See*

---

[5]  *Reporters Committee* involved Exemption 7(C), 5 U.S.C. 552(b)(7)(C), which protects personal information in records compiled for law enforcement when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This is a less stringent standard than Exemption 6 ("*would* constitute a *clearly* unwarranted invasion of personal privacy") (emphasis added), but the same principles apply to the balancing of public and private interests under both exemptions. *Reporters Committee*, 489 U.S. at 756.

[6] Plaintiff has pressed Ginnie Mae to explain why *Lepelletier* does not control.  Opposition fn 5. However, the agency has no duty to conduct research or to answer questions.  *Barber v. Office of Info. & Privacy*, No. 02-1748, slip op. at 4 (D.D.C. Sept. 4, 2003).  FOIA creates only a right of access to records, not a right to require an agency to disclose its collective reasoning behind agency actions, nor does FOIA provide a mechanism to challenge the wisdom of substantive agency decisions.  *Gillin v. Dep't of the Army*, No. 92-325, slip op. at 10 (D.N.H. May 28, 1993), *aff'd*, 21 F.3d 419 (1st Cir. 1994) (table).

*Schell v. Department of Health & Human Services*, 843 F.2d 933, 938 (6th Cir. 1988); *Ripskis v. Department of Housing & Urban Development*, 746 F.2d 1, 3 (D.C. Cir. 1984).

Both the common law and literal understandings of privacy encompass the individual's control of information concerning his or her person. *Reporters Committee*, 489 U.S. at 763. Citing <u>Websters</u> initial definition, the court noted that information may be classified as private if it is intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public. *Id*. at 763-764. The compilation of all investors due funds from issuers that have been unable to effectuate payment following six months of efforts is not freely available to the public. Second Foster Decl. ¶ 13. While it is possible for an individual investor to obtain information about the funds she is owed, the compilation is never released to the public. Second Foster Decl. ¶ 14. The court in *Reporters Committee* found that there was a vast difference between public records that might be found after a diligent search and a computerized summary located in a single clearinghouse of information. *Reporters Committee*, 489 U.S. at 764. In concluding that a strong privacy interest inheres to the nondisclosure of compiled computerized information, the court found support in the Privacy Act of 1974, 5 U.S.C. § 552a. *Id*. The list of payee names, dollar amounts, check numbers, issue dates and payee addresses contained in Ginnie Mae's UFS is clearly a computerized compilation of personal privacy data to which a strong privacy interest inheres. The right to collect and use such compilations is typically accompanied by a concomitant duty to avoid unwarranted disclosures. *Reporters Committee*, 489 U.S. at 770.

**C.    Plaintiff has Failed to Identify a Public Policy Reason for Releasing the Requested Personal Privacy Information**

Whether disclosure of personal privacy information is warranted turns on the nature of the requested information and its relationship to the basic purpose of FOIA "to open agency

14

actions to the light of public scrutiny." *Department of Air Force v. Ro*se, 425 U.S. at 372.  The

basic policy of full agency disclosure under FOIA unless the requested information is exempted

focuses on the citizens' right to be informed about activities of their government.  *Id.* at 360-361

(quoting S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)).  Official information that sheds light on

an agency's performance of its statutory duties falls squarely within that statutory purpose.  That

purpose, however, is not fostered by disclosure of information about private citizens that is

accumulated in various governmental files but that reveals little or nothing about an agency's

own conduct.  *Reporters Committee*, 489 U.S. at 773 ("The only relevant public interest in the

FOIA balancing analysis [is] the extent to which disclosure of the information sought would

'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know

'what their government is up to.'");  *United States Dep't of Defense v. FLRA*, 510 U.S. 487, 497

(1994) ("[U]nless the public would learn something directly about the workings of the

Government by knowing the names and addresses of its annuitants, their disclosure is not

affected with the public interest.  The simple fact is that those records say nothing of significance

about 'what the [] Government is up to.'");  *National Ass'n of Retired fed. Employees v. Horner*,

879 F.2d 873, 878-79 (D.C. Cir. 1989).

     Plaintiff in this case has ***failed to make a public policy argument*** in its Opposition.  He

performs a cursory analysis of Exemption 6 and informs the Court that it need not engage in the

traditional balancing of personal privacy rights as against the public's right to open agency

actions to the light of public scrutiny because "it has been determined that the public interest in

disclosure of HUD unclaimed funds that it held for FHA mortgage holders outweighs the privacy

interests of those individuals once HUD no longer actually searches for these individuals."

Opposition p. 13.  Plaintiff is wrong as to the state of the law and Ginnie Mae's efforts to locate

investors due funds from the UFS.  Ginnie Mae is different from FHA in that FHA has an obligation to attempt to locate mortgagors owed mortgage insured premium refunds whereas Ginnie Mae has **no obligation** whatsoever to locate investors owed returns on their investments in Ginnie Mae mortgage-backed securities.  Second Foster Decl. ¶ 17.

The only possible public policy argument that could be articulated here would be that information should be released in order to determine how effective the efforts of issuers, assisted by Ginnie Mae, have been in paying investors in the mortgage-backed securities program.  This argument would fail, however, as the issuers are not governmental entities and FOIA was designed to shed light on the government's operations, not the operations of private business entities.

If Plaintiff or any other member of the public was truly interested in opening Ginnie Mae's actions to the light of public scrutiny, they need only look at the overall effectiveness of returning to investors all monies due them.  The numbers reveals that Ginnie Mae has been extraordinarily successful in this regard.  The total of all unclaimed funds currently being held by Ginnie Mae is approximately $23 million.   Second Foster Decl. ¶ 15.   In May 2007 Ginnie Mae securitized $7.3 billion.  Second Foster Decl. ¶ 16.   The amount of unclaimed funds represents .00031 percent or 3/10,000ths of one percent of the amount securitized in May 2007. It is apparent that Plaintiff is not at all interested in shedding light on Ginnie Mae's operations because that goal could be accomplished simply by asking how much money is in the unclaimed funds account and comparing it to the amount securitized or the efforts that Ginnie Mae has made to assist issuers in locating investors when Ginnie Mae, as guarantor, not payor, was under no obligation to undertake such efforts.  Second Foster Decl. ¶ 17.  Instead, what Plaintiff is so vigorously trying to wrestle from Ginnie Mae is the identity and personal privacy information of

each person listed on the Unclaimed Funds List so that presumably he may give that information to his tracer client who will in turn pursue these individuals with the offer of obtaining their own money for them from Ginnie Mae and passing on a portion of that amount while retaining for himself a hefty fee for this unnecessary service.  The Freedom of Information Act was not enacted for this purpose.  Rather, its purpose is to allow citizens access to government records so that they can see what their government is up to.  *United States Dep't of Defense v. FLRA*, 510 U.S. at 497.  Because there is absolutely no public policy reason to compel the release of this personal privacy information the Court should affirm HUD's denial of Plaintiff's FOIA request.

**D.    Ginnie Mae is Actively Attempting to Locate Investors on the Unclaimed Fund List**

Pursuant to the standard form Guaranty Agreement issuers must execute with Ginnie Mae, issuers are responsible for making regular and timely payments to the investors in Ginnie Mae backed securities.  Foster Decl.  ¶ 4.  All payments due to investors not delivered within six months are sent to Ginnie Mae (through the CTPA).  *Id.* 8.  Ginnie Mae maintains a list (Unclaimed Funds List) of investors for whom issuers have been unable to effectuate regular and timely payments.

The obligation to locate the investor is the obligation of the issuer, not Ginnie Mae.  However, Ginnie Mae has implemented a program to locate investors with unclaimed funds.[7] Second Foster Decl. ¶ 17.  Beginning in 2004, Ginnie Mae has partnered with the Internal Revenue Service (IRS) to locate investors due unclaimed funds by matching the Social Security Numbers in Ginnie Mae's records with the IRS tax database.  *Id.* ¶ 18.  If a match is found, the IRS sends a letter to the individual investor on Ginnie Mae's behalf with explicit instructions on

---

[7] Even after forwarding unclaimed or unpaid funds to the CPTA and then to Ginnie Mae, the issuers have a continuing obligation to attempt to locate Investors who are due payments and to document those efforts.  Foster Decl. ¶ 10.

how to contact the issuer so that the funds can be claimed. *Id.* ¶ 19.  This method is effective, requires minimal effort on the part of investors and does not compromise individual personal privacy. *Id.* ¶ 20.  When investors are located using this (or any other method employed by Ginnie Mae) they receive *100 percent of the funds due to them*. *Id.* ¶ 21.  Ginnie Mae is also in the process of developing a web site whereby individual investors would be able to enter their names into a database in order to determine whether or not they are owed funds as part of the Unclaimed Funds List. *Id.* ¶ 22.  This program will provide yet another way for investors to receive 100 percent of the funds due to them as opposed to the diminished return a tracer such as the one presumably represented by Plaintiff would provide them.

**E.    Balancing Investors' Personal Privacy Rights Against the Public's Interest in the Release of the Requested Information**

Whether disclosure of personal privacy information is warranted turns on the nature of the requested information and its relationship to the basic purpose of FOIA "to open agency actions to the light of public scrutiny." *Department of Air Force v. Ro*se, 425 U.S. 352, 372.  A slight privacy interest outweighs no public interest. *National Ass'n of Retired fed. Employees v. Horner*, 879 F.2d 873, 879.

Plaintiff argues in his brief[8] *that Lepelletier v. FDIC*[9] stands for the proposition that the long-accepted balancing test the United States Supreme Court enunciated in *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989), does not apply to the case at bar.  He does not, however, explain how the an appellate court could have overruled the Supreme Court.

---

[8] Opposition pp. 12-13.
[9] 164 F.3d 37 (D.C.Cir. 1999).

Even if the Supreme Court had not been exceedingly clear in *Reporters Committee* that the balancing test was required when determining whether to release personal privacy information, *Lepelletier* is easily distinguishable.  In *Lepelletier* a tracer requested, through FOIA, the names of depositors with unclaimed funds at three banks for which the Federal Deposit Insurance Corporation (FDIC) was the receiver.  *Lepelletier v. FDIC*, 164 F.3d 37 at 39. In that case, however, the FDIC's only effort to locate the depositors with unclaimed funds was one notice in seven years.  *Id.*  In this case, Ginnie Mae has made continuous efforts to locate investors owed money, notwithstanding that Ginnie Mae is under no obligation to do so.  Second Foster Decl. ¶ 18.  Additionally, the funds in the FDIC's unclaimed funds account were forfeited to FDIC after a period of time, whereas the funds in Ginnie Mae's Unclaimed Funds System will never be forfeited to Ginnie Mae.  *Id.*

Where, as here, investors have a protected interest in their personal privacy information not being released to the public and Plaintiff has articulated no public policy reason justifying the release of personal privacy information, the Exemption 6 balancing test tips decidedly in favor of withholding the requested information.  Accordingly, Defendant properly denied Plaintiff's FOIA request.

## CONCLUSION

For the foregoing reasons, as well as those set forth in defendant's motion for summary judgment, Defendant respectfully requests that this Court grant summary judgment in defendant's favor and deny plaintiff's motion for summary judgment.

July 5, 2007                                        Respectfully submitted,


                                                   _____/s/_____
                                                   Jeffrey A. Taylor, D.C. Bar # 498610
                                                   United States Attorney


                                                   _____/s/_____
                                                   Rudolph Contreras, D.C. Bar #434122
                                                   Assistant United States Attorney


                                                   _____/s/_____
                                                   John F. Henault, D.C. Bar # 472590
                                                   Assistant United States Attorney
                                                   555 4th Street, NW
                                                   Washington, DC 20530
                                                   (202) 307-1249
                                                   (202) 514-8780 facsimile

Of Counsel:

TERRI L. ROMÁN
Trial Attorney
451 Seventh Street, SW
Room 10258
Washington, DC  20410
(202) 402-6668
(202) 708-3351 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SCOTT A. HODES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-0161 (CKK)** |
| | ) | |
| **U.S. DEPARTMENT OF HOUSING** | ) | |
| **AND URBAN DEVELOPMENT,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**SECOND DECLARATION OF THEODORE FOSTER**

I, Theodore Foster, do hereby declare and state:

1.     A tracer is a business concern that earns money by assisting individuals, for a fee, in obtaining money due to them.  Tracers sometimes get involved in locating individuals owed money by governmental agencies.

2.     When a tracer locates a person due a refund from a governmental agency such as Ginnie Mae, that tracer will only assist the person in obtaining their refund in exchange for a fee of typically 30-40 percent of the refund due.

3.     It is Ginnie Mae's goal to ensure that every investor in Ginnie Mae mortgage-backed securities receives 100 percent of the return on their investments.

4.     When tracers unnecessarily insert themselves into the refund process, they defeat Ginnie Mae's goal of returning to investors 100 percent of their return and in effect divert a substantial amount of investor refunds to themselves.

5.     I am very familiar with the underlying mortgage-backed securities industry and have been in almost daily contact with issuers/submitters of the information Plaintiff seeks throughout many years.

6.     The opinions in my declarations related to competitive harm to issuers from the unwarranted disclosure of personal privacy information of investors is based upon my 18 years experience in the day-to-day operations of Ginnie Mae including my 5 years experience as a Senior Vice President at Ginnie Mae, my experience as the Director of Issuer Management at Ginnie Mae and my intimate knowledge of the mortgage-backed securities industry.

7.     I am very familiar with the mortgage-backed securities industry having been in Ginnie Mae's employ for 18 years, five of which have been in the capacity of Senior Vice President.

8.     In this role, I not only have direct, daily contact with Ginnie Mae Issuers, I frequently attend industry-wide conventions where I am invited to speak as an expert on subjects of interest to the mortgage-backed securities industry.

9.     The requested personal privacy information Plaintiff seeks is not the type of information an issuer of mortgage-backed securities would ever release to a competitor.

10.     This opinion is based upon my extensive day-to-day contact with such issuers over the course of many years.

11.     I am a Senior Vice President at Ginnie Mae, one of the world's largest guarantors of mortgage-backed securities.

12.     During my entire tenure as Senior Vice President, Ginnie Mae has operated at no cost to the government.

13.     Clearly, the compilation of all investors due funds from issuers that have been unable to effectuate payment following six months of efforts is not freely available to the public.

14.     While it is possible for an individual investor to obtain information about her refund due, the compilation is never released to the public.

15.     The total of all unclaimed funds currently being held by Ginnie Mae is approximately $23 million.

16.     In May 2007 Ginnie Mae securitized $7.3 billion.

17.     The issuer, not Ginnie Mae has the obligation to locate investors owed money. Ginnie Mae is the guarantor, not the payor.  Nevertheless, in the interest of program integrity, Ginnie May has implemented a program to locate investors with unclaimed funds.  Even after forwarding unclaimed or unpaid funds to the CPTA and then to Ginnie Mae, the issuers have a continuing obligation to attempt to locate investors who are due payments and to document those efforts.

18.     Beginning in 2004, Ginnie Mae has partnered with the Internal Revenue Service (IRS) to locate investors due unclaimed funds by matching the Social Security Numbers in Ginnie Mae's records with the IRS tax database.  Ginnie Mae makes continuous efforts to locate investors owed money.  Funds in Ginnie Mae's Unclaimed Funds System will never be forfeited to Ginnie Mae.

19.     If a match is found, the IRS sends a letter to the individual investor on Ginnie Mae's behalf with explicit instructions on how the investor can contact the issuer so that the funds can be claimed.

3

20.    This method is effective, requires minimal effort on the part of investors and does not compromise individual personal privacy.

21.    When investors are located using this (or any other method employed by Ginnie Mae) they receive 100 percent of the funds due to them.

22.    Ginnie Mae is also in the process of developing a web site whereby individual investors could enter their names into a database in order to determine whether or not they are owed funds as part of the Unclaimed Funds List.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Signed this 3rd day of July 2007.

Theodore Foster
Senior Vice President
Ginnie Mae
U.S. Department of Housing
and Urban Development

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SCOTT A. HODES,                                )
                                               )
                        Plaintiff,             )
                                               )
        v.                                     )        No. 07-0161 (CKK)
                                               )
U.S. DEPARTMENT OF HOUSING AND                 )
URBAN DEVELOPMENT,                             )
                                               )
                        Defendant.             )
_____)

## <u>ORDER</u>

        This matter comes before the Court on defendant's motion for summary judgment

and plaintiff's cross-motion for summary judgment.  After considering all relevant

pleadings, applicable law and the record herein, it is this _____ day of _____,

2007, hereby,

        ORDERED, that defendant's motion is GRANTED.  It is further ORDERED that

plaintiff's motion is DENIED.  This is a final, appealable Order.

                                               _____
                                               Colleen Kollar-Kotelly
                                               United States District Judge