UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTT A. HODES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 07-0161 (CKK) |
| ) | |
| UNITED STATES DEPARTMENT ) | |
| OF HOUSING AND URBAN ) | |
| DEVELOPMENT, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

PLAINTIFF'S REPLY TO DEFENDANT'S CONSOLIDATED REPLY IN SUPPORT
OF SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT

Plaintiff, Scott A. Hodes, respectfully submits this reply to defendant's consolidated reply in support of summary judgment and opposition to plaintiff's cross-motion for summary judgment.

**INTRODUCTION**

This case concerns a Freedom of Information Act (FOIA) request made by plaintiff to defendant the United States Department of Housing and Urban Development ("HUD") seeking a "copy of the payee names, dollar amounts, check numbers issue dates and payee addresses contained in the Ginnie Mae Unclaimed Funds System (UFS)." Defendant has attempted to withhold this information pursuant to FOIA Exemptions 3, 4 and 6.

In its Consolidated Reply in Support of Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Defendant's Opposition"), defendant expresses its belief as to the reasons why plaintiff has made the FOIA request at issue in

this lawsuit, and what plaintiff's unnamed client will do with the information if it is ultimately released. Defendant's Opposition at 1-2. However, the FOIA requester's need or intended use of the requested material is irrelevant to the outcome of the lawsuit. North v. Walsh, 881 F.2d 1088, 1096 (D.C. Cir. 1989). Additionally, plaintiff has not even entered into the record his reason for making the FOIA request, nor is he required to do so. See, e.g., NARA v. Favish, 541 U.S. 157, 172 reh'g denied, 541 U.S. 1057 (2004). Thus, the comments in Defendant's Opposition at 1-2 are nothing more than a red herring, completely irrelevant to the outcome of this FOIA matter.

It remains, like all FOIA cases, the government's burden to establish that the exemptions it has invoked apply to the withheld material. 5 U.S.C. § 552(a)(4)(B) (2000 & Supp. IV 2004). As detailed below, and in Plaintiff's Memorandum in Support of his Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Plaintiff's Cross-Motion"), which is incorporated herein by reference, defendant has not established that FOIA Exemptions 3, 4 and 6 apply to the requested material.

Argument

**I. EXEMPTION 3 DOES NOT APPLY TO THE WITHHELD RECORDS**

Defendant continues to assert that it has properly invoked Exemption 3 of the FOIA through the privacy provisions of the Gramm Leach Bliley Act ("Gramm Leach Bliley") found at 15 U.S.C. § 6801-6809 to withhold the requested records. Defendant's Opposition at 4-5. However, as was established in Plaintiff's Cross-Motion at 3-4, Defendant has not even properly invoked Exemption 3 in this instance.

Defendant claims it need only raise the exemption at the district court level and that it has done so in this instance. Defendant's Opposition at 4-5. However, defendant only discusses its alleged invocation of Exemption 3 in the brief filed on defendant's behalf by the Department of Justice. Defendant HUD never invokes Exemption 3 in any of the declarations it has filed to support its withholdings. Despite defendant's assertions otherwise, the agency (not the Department of Justice in its defense of the agency) must invoke the exemption at the district court level. See Ryan v. Dep't of Justice, 617 F.2d 781, 792 n.38. HUD has not done this and, therefore has waived its right to use Exemption 3 as a basis for withholding the responsive material from plaintiff.

Alternatively, as explained in Plaintiff's Cross-Motion at 4-6, even if it can be construed that Gramm Leach Bliley and Exemption 3 was properly invoked by the defendant, defendant has still not established that the act protects the withheld records pursuant to Exemption 3 of the FOIA.

Defendant does not address the fact that privacy protections of Gramm Leach Bliley only extend to records of individuals, not to records of businesses such as corporations. 15 U.S.C. § 6809(9). Thus, the only records at issue that could even be possibly covered under the provisions of Gramm Leach Bliley are records identifiable to individual investors that are on the Unclaimed Funds List.[1]

---

[1] In fact at no place in any of its briefs or underlying declarations has defendant discussed that certain of the records in the UFS concern individuals and certain apply to business entities. This is important in that all three FOIA Exemptions allegedly invoked by defendant would only apply to certain parts of the records maintained in the UFS. Additionally, defendant has never explained what exemptions apply to what portions of the UFS or why portions of the records in the UFS are not segragable as required by the FOIA.

Defendant asserts that it can be construed as a nonaffiliated third party pursuant to 15 U. S.C. § 6809(5) due to what it says is the "plain language" of the statue, regardless of the decision of a federal district court in Lacerte Software Corporation v. Professional Tax Services, 2006 U.S. Dist. Lexis 12779 at *3 (N.D. Tex. Jan. 6, 2006). Defendant doesn't cite any other case law that distinguishes or overrules Lacerte Software, nor does it discuss why the non-affiliated third party rule was established, which was so that other commercial institutions live under the same disclosure policies as the financial institutions that the information came from originally. 15 U.S.C. § 6802(c). Thus, HUD has not established that it is a nonaffiliated third party under Gramm Leach Bliley.

Finally, defendant states that plaintiff must be the one to assert what privacy notices have been issued pursuant to 15 U.S.C. § 6802(a). Defendant's Opposition at 6-7. However, it is defendant that is claiming that release of the requested information would be a violation of Gramm-Leach-Bliley and it is the party that must establish that the Exemption it is trying to invoke applies to the requested material. 5 U.S.C. § 552(a)(4)(B) (2000 & Supp. IV 2004). Plaintiff doesn't have to establish that the disclosure is prohibited by Gramm Leach Bliley, defendant does, and in order to do this, it needs to address the notice requirement of Gramm Leach Bliley.

## II. EXEMPTION 4 DOES NOT APPLY

Defendant also continues to assert that Exemption 4 applies to the withheld records and that the two declarations of Theodore Foster establish this. Defendant's Opposition at 2-3, 7-12.

Defendant continues to assert that its claim that a release of the requested information would cause a competitive harm to the submitters of the information, and

that the declarations of Theodore Foster establish this fact. Defendant's Opposition at 8-10. Defendant claims that this case is akin to the one in Lion Raisins v. USDA, 354 F.3d 1072, 1080 (9th Cir. 2004) where a declaration from agency personnel was enough to establish that submitters would incur a competitive harm from the release of requested information. However, the declarant in Lion Raisins specifically established his contact with the underlying industry, id., where the Foster Declarations, while attempting to ape the language found in Lion Raisins are conclusory and do not establish that Exemption 4 has been properly invoked.[2]

    In Plaintiff's Cross-Motion, the non-specific and conclusory statements made by Foster in his first declaration were discussed. Plaintiff's Cross-Motion at 8-9. The opinions in the Second Declaration of Theodore Foster ("Second Foster Decl.") are also conclusory as Foster never establishes how he reaches his conclusions concerning the mortgage backed securities industry. For example, Foster states that he has been employed with Ginnie Mae for eighteen (18) years, the last five (5) as a senior vice-president. Second Foster Decl., ¶6. Foster states that he has been "in almost daily contact" with issuers/submitters of the information plaintiff seeks, id., ¶5, however, he never describes what "almost daily contact" means, nor does he describe what this contact is about. In fact, Foster never states what his actual day to day duties are. Furthermore, Foster states that he is "invited to speak as an expert on subjects of interest to the mortgage-backed securities industry," id., ¶8, but he never states what topics he has

---

[2] In its Opposition, Defendant introduces the Second Declaration of Theodore Foster ("Second Foster Decl.") in which Foster attempts to further explain the opinions made in his first declaration because defendant states that plaintiff is making speculative allegations about Foster. Defendant's Opposition at 3. Plaintiff did not make allegations about Foster, plaintiff merely pointed out that the opinions in Foster's First Declaration were conclusory and non-specific.

actually lectured this industry on. Nor does Foster ever state that he spoke with the mortgage-backed securities industry on the issues raised in this matter. He states that "the requested personal privacy information" sought "is not the type of information an issuer of mortgage-backed securities would ever release to a competitor." Id., ¶9. Again, Foster never specifically states what interactions with the issuers allowed him to acquire and develop these opinions or what contact with these issuers allowed him to specifically acquire this information.

In order to sustain its motion for summary judgment, the affidavits the motion is based on must be specific. Hemenway v. Hughes, 601 F. Supp. 1002, 1004 (D.D.C. 1985). Where, as here, the agency affidavits attempting to justify the use of Exemption 4 are conclusory, summary judgment is properly denied—even where plaintiff remains silent. Niagra Mohawk Power Corp. v. U.S. Dep't of Energy, 169 F.3d 16, 18 (D.C. Cir. 1999). Thus, defendant has not established that there would be a competitive harm in the release of the requested information and is not entitled to summary judgment on its use of Exemption 4.

Defendant also argues that disclosure would impair its ability to fulfill its statutory purpose. Defendant's Opposition at 10-12. However, this argument is also based on the conclusory Foster declarations, and as demonstrated in Plaintiff's cross-motion has no effect. Defendant also attempts to again state that Clarke v. Dept. of the Treasury, No. 84-1873, 1986 WL 1234 (E.D. Pa. Jan. 28, 1986) allows for the withholding under this prong of Exemption 4. Defendant's Opposition at 11-12. However, as was clearly demonstrated in Plaintiff's Cross-Motion at 7, Clarke is not applicable to the case at hand. Defendant has not established that any impairment of its

6

statutory purpose will befall it if the requested information is released; as such it has not established that Exemption 4 applies to the requested materials.

### III. EXEMPTION 6 DOES NOT APPLY

Exemption 6 protects "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Defendant attempts to protect all the information in the UFS pursuant to this exemption. However, exemption 6 only applies to information pertaining to individuals. Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982). As certain of the information in the UFS applies to corporate entities,[3] the corporate information in the UFS is not withholdable pursuant to FOIA Exemption 6.

Defendant attempts to frame the argument in terms of the decision in Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989) and claims that plaintiff has not met his burden in establishing that the public interest in the release of the requested material outweighs the privacy interests implicated in Exemption 6. Defendant's Opposition at 14-18. Defendant's argument, however, continues defendant's failure to acknowledge that the law in the D.C. Circuit concerning Exemption 6 and unclaimed funds matters is covered by Lepelletier v. FDIC, 164 F.3d 37 (D.C. Cir. 1999) and the other cases discussed in plaintiff's Cross-Motion at 12-14. Defendant claims it doesn't have to addressed why Lepelletier in this instance. Defendant's Opposition at 13,n.6. Defendant's duty in answering a FOIA request is to either release records or withhold them pursuant to one of the nine (9) enumerated FOIA Exemptions.

---

[3] Defendant's failure to provide an adequate Vaughn index that describes the amount of material in the UFS that pertains to individuals versus the amount of material that pertains to corporate entities is another reason that summary judgment on behalf of defendant is not appropriate at this time.

If, as here, defendant invokes one of the exemptions, it must follow the law that has been derived for that exemption. Lepelletier is the law in the D.C. Circuit that controls this case – and as established in the Plaintiff's Cross-Motion at 12-14, plaintiff has established that he is entitled to the records under the precedent set in that case.

Further, defendant, at the eleventh hour, attempts to state that it has established a program to search for those owed money in the UFS. Defendant's Opposition at 17-19. Defendant now claims it has set up a partnership with the IRS to search for unclaimed funds and is setting up another web based system for those owed funds in the future.[4] Id. Defendant's statements concerning these programs are provided in the Second Foster Declaration, ¶¶17-22. These statements, like Foster's statements attempting to justify the use of Exemption 4, are conclusory and do not explain how the defendant is actively searching for those owed funds in the UFS. No details on how the program with the IRS operates, such as how the IRS knows to look for those on the list. Additionally, no details about the success of the program in locating unclaimed funds owners are provided. Nor are any details provided about the contemplated web based system. As defendant has not really established that there is an active program seeking UFS owners, defendant has not established that the information is protectible pursuant to Exemption 6 in light of the precedent of Lepelletier. Thus, defendant should be denied summary judgment and the information should be released to plaintiff.

---

[4] The web based systems set up defendant for unclaimed funds of its other components and how these web sites allow for anyone to retrieve other individuals personal information was described in Plaintiff's Cross-Motion at 13

## CONCLUSION

Defendant has failed to establish that the UFS information sought by plaintiff is protected pursuant to FOIA Exemption 3, 4 and 6. Thus, summary judgment should be denied for defendant. Therefore, summary judgment should be granted for, and the requested information should be released to plaintiff.

Respectfully submitted,

_____/s/_____
Scott A. Hodes
(D.C. Bar No. 430375)

P.O. Box 42002
Washington, D.C. 20015
Phone (301) 404-0502
Fax (301) 738-2128

Plaintiff

Dated: July 23, 2007