UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SCOTT A. HODES,

    Plaintiff,

      v.

U.S. DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

    Defendant.

Civil Action No. 07-161 (CKK)

**MEMORANDUM OPINION**
(January 31, 2008)

    This is a FOIA case brought by attorney Scott Hodes ("Hodes") against the United States Department of Housing and Urban Development ("HUD"). Hodes is seeking disclosure of certain information contained in the Ginnie Mae Unclaimed Funds List, a database listing individuals and commercial entities who are owed monies as a result of their investments in Ginnie Mae-backed securities but who cannot be located for one reason or another. The Parties have filed Cross-Motions for Summary Judgment on the dispositive issue of whether HUD was correct to withhold the requested information based on FOIA Exemptions 3, 4, and 6. After a thorough review of the Parties' submissions and attachments thereto, applicable statutory authority and case law, the Court shall grant in part and deny in part Defendant's [9] Motion for Summary Judgment and grant in part and deny in part Plaintiff's [11] Motion for Summary Judgment, for the reasons that follow.

**I.  BACKGROUND**

    The Government National Mortgage Association ("Ginnie Mae") is a wholly-owned

corporate instrumentality within HUD.  *See* Def.'s Mot. for Summ. J., Ex. 1 ¶ 1 (Declaration of Theodore Foster dated April 27, 2007) (hereinafter, "Foster Decl.").  Ginnie Mae operates a "Mortgage-Backed Securities Program" ("MBS Program") designed to "attract new sources of private capital into federally insured or guaranteed residential lending programs, thereby increasing funds available for the purchase of low- and moderate-income housing."  *Id.* ¶ 2.  Pursuant to the MBS Program, private lenders are permitted to issue securities backed by mortgages or other home loans insured or guaranteed by Ginnie Mae ("Issuers").  *Id.*; 12 U.S.C. § 1721(g) (authorizing associations to guarantee principal and interest on trust certificates and other securities).  In the event of a default, Ginnie Mae has the right to terminate and extinguish the rights of any Issuer and to "make such payment as and when due in cash."  *Id.* ¶ 5; 12 U.S.C. § 1721(g).

Purchasers of Ginnie Mae-backed securities ("Security Holders") consist of both persons and commercial entities.  *Id.* ¶ 13.  When an Issuer can no longer locate a Security Holder over a period of six months, payments that are due and information identifying the Security Holder are sent by the Issuer to Ginnie Mae's Central Paying and Transferring Agent ("CPTA").  *Id.* ¶ 8.  The funds are then "recorded into the CPTA's database and transferred to Ginnie Mae's accounts at the Department of Treasury."  *Id.*  The information concerning the Security Holders is aggregated into the Unclaimed Funds List.  *Id.* ¶ 9.

On December 14, 2004, Hodes submitted a request under the Freedom of Information Act ("FOIA"), seeking to obtain from HUD a "copy of the payee names, dollar amounts; check numbers issue dates and payee addresses contained in the Ginnie Mae Unclaimed Funds

System."[1]  Pl.'s Mot. for Summ. J., Ex. 1 at 1 (Hodes FOIA Request).  HUD responded by letter dated April 18, 2005, indicating that the information was exempt from disclosure under FOIA Exemptions 4 and 6.  *Id.*, Ex. 2 at 1 (HUD Denial).  Hodes filed an administrative appeal on June 8, 2005.  *Id.*, Ex. 3 at 1 (Hodes Appeal).  By letter dated March 17, 2006, HUD affirmed its denial of Hodes's request.  *Id.*, Ex. 4 at 1 (HUD Second Denial).  This lawsuit followed on January 23, 2007.

## II.  LEGAL STANDARD

In reviewing Motions for Summary Judgment under FOIA, the Court must conduct a *de novo* review of the record.  *See* 5 U.S.C. § 552(a)(4)(B).  In the FOIA context, "*de novo* review requires the court to 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested are not "agency records" or are exempt from disclosure under the FOIA.'"  *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)).

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251-42 (1986).

---

[1] Hodes indicated in his correspondence with HUD that he wanted this information to "put[] money back into the economy" and to "create jobs."  Pl.'s Mot. for Summ. J., Ex. 1 at 1 (Hodes FOIA Request).  HUD asserts that Hodes is seeking this information on behalf of an unnamed client who functions as a "tracer" (a person who assists others in obtaining their unclaimed funds for a fee).  *See* Pl.'s Mot. for Summ. J. at 2.  The Court finds this dispute immaterial to resolution of the present claims.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980).  Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency seeking it proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp 32, 35 (D.D.C. 1996) (citing *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).  The agency bears the burden of demonstrating that its search was adequate and in good faith.  *Tarullo v. Dep't of Defense*, 170 F. Supp. 2d 271, 274 (D. Conn. 2001).  A good faith search effort uses methods that can be reasonably expected to produce the information requested.  *See Ogelsby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Congress enacted FOIA for the purpose of introducing transparency to government activities.  *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998).  Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold requested information.  *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9).  The agency must demonstrate the validity of any exemption that it asserts.  *See id.*; *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) ("[c]onsistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents").  Summary judgment may be granted on the basis of the agency's accompanying affidavits or declarations if they describe "the justifications

4

for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search. *See SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). In opposing a motion for summary judgment, a plaintiff must offer more than conclusory statements. *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)).

Courts must "accord substantial weight" to an agency's affidavit regarding FOIA exemptions. 5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'") (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200). Indeed, because FOIA exemptions are narrowly construed, should an agency correctly show that FOIA does not apply to withheld material, the Court's review of the agency's decision is limited to determining whether the agency abused its discretion. *Mead Data Cent. Inc. v. Dep't of Air Force*, 566 F.2d 242, 259 (D.C. Cir. 1977). Therefore, should an exemption correctly apply, an agency's justification for withholding information need not allude to a specific injury. *See id.* at 258-59 (permitting the agency to rely upon the explanation that disclosure "would impair the deliberative process . . . by impairing the free and frank exchange of ideas among [agency] personnel").

Moreover, the agency must detail what proportion of the information in a document is

non-exempt and how that material is dispersed throughout the document. *Mead Data Cent. Inc.*, 566 F.2d at 261. Any non-exempt information that is reasonably segregable from the requested records must be disclosed. *Ogelsby*, 79 F.3d at 1178. In addition, district courts are required to consider segregability issues *sua sponte* even when the parties have not specifically raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

### III.  DISCUSSION

The Freedom of Information Act requires federal agencies, in responding to a request for information, to: (1) conduct an adequate search for that information through reasonable efforts; (2) provide the information to the requester unless it falls within a FOIA exemption; and (3) provide to a requester any material that can reasonably be segregated from the exempt information. 5 U.S.C. § 552(a)(3); 5 U.S.C. § 552(b). HUD invokes FOIA Exemptions 3, 4, and 6 as justifications for withholding the information Hodes requested. *See* 5 U.S.C. §§ 522(b)(3), (b)(4), and (b)(6). While Hodes does not argue that HUD's search for information was inadequate, he argues that HUD improperly invoked each of these three FOIA exemptions. *See* Pl.'s Mot. for Summ. J. at 2-3. The Court shall address each exemption in turn.

   A.   *FOIA Exemption 3*

Exemption 3 allows an agency to withhold information "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Unlike other FOIA exemptions, Exemption 3 "depends less on the detailed factual

contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Goland v. Central Intelligence Agency*, 607 F.2d 339, 350 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980). HUD argues that the Gramm Leach Bliley Act of 1999, 15 U.S.C. §§ 6801, *et seq.* (the "Gramm Leach Bliley Act" or "the Act"), prohibits disclosure of the information requested by Hodes, and that HUD therefore appropriately invoked Exemption 3. *See* Def.'s Mot. for Summ. J. at 6-8.

The Gramm Leach Bliley Act was enacted by Congress to effectuate its policy that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 5 U.S.C. § 6801(a). The Act contains two related confidentiality provisions. The first provision prevents financial institutions from releasing nonpublic personal information without providing notice to consumers:

> Except as otherwise provided . . . a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with [15 U.S.C. § 6803].

5 U.S.C. § 6802(a). The second confidentiality provision expressly limits the reuse of information disclosed by financial institutions to nonaffiliated third parties:

> Except as otherwise provided . . . a nonaffiliated third party that receives from a financial institution nonpublic personal information under this section shall not, directly or through an affiliate of such receiving third party, disclose such information to any other person that is a nonaffiliated third party of both the financial institution and such receiving third party, unless such disclosure would be lawful if made directly to such other person by the financial institution.

5 U.S.C. § 6802(c).

HUD argues that Issuers of Ginnie Mae-backed securities constitute financial institutions

who submit nonpublic personal information to Ginnie Mae, a nonaffiliated third party, and that Ginnie Mae cannot disclose the information pursuant to the Act's confidentiality provisions. *See* Def.'s Mot. for Summ. J. at 6. Hodes does not dispute that the Issuers are financial institutions under the Act, nor that they submit nonpublic personal information to Ginnie Mae. *See* Pl.'s Mot. for Summ. J. at 6. Rather, Hodes argues that the Act does not prohibit HUD from disclosing the requested information because (1) HUD is not a nonaffiliated third party as defined by the Act, (2) HUD has failed to show that consumers were *not* given notice that their information would be disclosed to Hodes by Ginnie Mae, and (3) the Act only applies to information concerning persons and not commercial entities.[2]

      1.      <u>Nonaffiliated Third Party</u>

Under the Act, a "nonaffiliated third party" is defined as "*any* entity that is not an affiliate of, or related by common ownership or affiliated by corporate control with, the financial institution, but does not include a joint employee of such institution." 5 U.S.C. § 6809(3)(A) (emphasis added). Because HUD argues (and Hodes does not dispute) that Ginnie Mae has no affiliation with the financial institutions (i.e., Issuers) providing it with nonpublic personal information, *see* Def.'s Reply at 6, Ginnie Mae appears to fall squarely within the statutory

---

[2] Hodes also argues that HUD waived its ability to invoke Exemption 3 because it did not reference that exemption in its April 18, 2005 letter denying Hodes's FOIA request, but that argument is clearly meritless. An agency does not "waive" its right to invoke an exception prior to suit. *See Sciba v. Bd. of Governor of Fed. Reserve Sys.*, No. 04-1011, 2005 U.S. Dist. LEXIS 6007, at *6 n.3 (D.D.C. Mar. 30, 2005) ("an agency only waives FOIA Exemptions by failing to claim them in the original proceedings before the district court"). The case cited by Hodes, *Ryan v. Dep't of Justice*, notes that an agency's failure to raise an exemption at the district court level precludes its use on appeal, 617 F.2d 781, 792 n.38a (D.C. Cir. 1980) – a notion that provides no support for Hodes's argument that an agency must immediately invoke an exception (even prior to litigation) or lose it forever.

definition of a nonaffiliated third party.

Hodes argues that Ginnie Mae is not a nonaffiliated third party because the Act's confidentiality provisions only apply to "financial institutions" and Ginnie Mae is not a financial institution. Hodes's interpretation of the Act is unpersuasive. First, the statute's plain language indicates that "any" entity may be considered a nonaffiliated third party, not just other financial institutions. *See* 5 U.S.C. § 6809(3)(A); *Ctr. for Public Integrity v. Dep't of Energy*, 191 F. Supp. 2d 187, 192 (D.D.C. 2002) (interpreting a different statute for purposes of FOIA Exemption 3 but holding that "the provision must be interpreted by determining the meaning of those words that are present in the text") (emphasis in original omitted). Second, if Hodes's interpretation were correct, Congress would have needlessly created and defined two terms – "nonaffiliated third party" and "financial institution" – even though under Hodes's interpretation they would have the same meaning. Well-established doctrines of interpretation counsel against reading a statute so as to render any word or phrase meaningless. *See Tax Analysts v. Internal Revenue Service*, 217 F. Supp. 2d 23, 28 (D.D.C. 2002) ("[i]t is a well-established principle that when interpreting statutes or contractual provisions, a court should 'absent a clear indication to the contrary, . . . read the statute [or provision] so that no word, clause, sentence, or phase is rendered surplusage, superfluous, meaningless or nugatory'") (quoting *Air Line Pilots Ass'n, Int'l v. Pension Benefit Guar. Corp.*, 193 F. Supp. 2d 209, 218 (D.D.C. 2002). Third, the practical effect of Hodes's interpretation would be antithetical to the Act's stated purpose, which is, in part, to "insure the security and confidentiality of customer records and information." 15 U.S.C. § 6801(b)(1). If Hodes were correct that the Act's confidentiality provisions were only applicable to financial institutions, nonpublic consumer information could be disclosed to any

number of third party entities that would be unbound by the Act's restrictions on the use of that information, rendering its confidentiality provisions largely meaningless.

Hodes's reliance on *Lacerte Software Corp. v. Prof'l Tax Servs., et al.* is misplaced. 2006 U.S. Dist. LEXIS 12779 at *3 (N.D. Tex. Jan. 6, 2006). In that case, one of the individual defendants complained that the plaintiff violated the Gramm Leach Bliley Act by including his personal credit card number and signature in its complaint. *Id.* at *2. The Court held that the Act was not violated because it only applies to financial institutions and Plaintiff was a software company. *Id.* at *4. As is clear from those facts, the issue did not concern the *reuse* of nonpublic personal information. There is no dispute that the Gramm Leach Bliley Act only applies where such information originates, in the first instance, with a financial institution. Hodes has raised a different question, and one that was not presented in *Lacerte*, as to whether a nonaffiliated third party receiving information from a financial institution must also be a financial institution for the Act to apply, and the plain language of the Act combined with the other considerations discussed above suggest that the Act is not so limited.[3]

Finally, Hodes suggests that "the rule of nonaffiliated third parties also [does not] apply to the government as this rule was made to make other commercial institutions live under the

---

[3] Although HUD does not raise the argument, the Court notes that Ginnie Mae may, in fact, qualify as a financial institution. The Gramm Leach Bliley Act defines "financial institution" as "any institution the business of which is engaging in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956." 15 U.S.C. § 6809(3). Included among those activities are "insuring, guaranteeing, or indemnifying against loss." 12 U.S.C. § 1843(k)(4)(B). The declaration submitted by HUD suggests that "[t]o protect the security holders from the risks associated with borrower and issuer defaults, Ginnie Mae *guarantees* the timely payment of principal and interest on the securities." Foster Decl. ¶ 5 (emphasis added). In any event, because the Court rejects Hodes's interpretation of the Act that limits its provisions to financial institutions, the Court need not explore this question further.

same disclosure policies as the financial institutions that the information came from originally."
*See* Pl.'s Mot. for Summ. J. at 5 (citing 15 U.S.C. § 6802(c)). This interpretation is subject to the same deficiencies described above, not the least of which is that the Act nowhere exempts governmental entities from its confidentiality provisions, nor would doing so comport with the purpose of the Act, which is to safeguard consumer information.[4]

        2.      Consumer Notice

Hodes's second argument does not require extended discussion. Hodes argues that disclosure is only prohibited under the Gramm Leach Bliley Act when consumers have not been provided with notice of impending disclosures, and that HUD "does not attest to have knowledge that of [sic] any of the financial institutions [sic] privacy notices to consumers in this case" did not disclose that Ginnie Mae would provide their nonpublic personal information to Hodes. Pl.'s Mot. for Summ. J. at 6. Not only does Hodes's argument seek to have HUD prove a negative (i.e., that the Issuers did *not* provide such notice), and not only does Hodes's argument reverse the presumption under the Gramm Leach Bliley Act that all nonpublic personal information remains confidential unless notice is provided to each consumer (i.e., notice likely exists unless proven otherwise by HUD), it is also patently implausible. Hodes offers nothing more than speculation that the notices provided by Issuers to consumers would somehow contain a notice that their information could be disclosed by Ginnie Mae under the present circumstances, despite HUD's not having previously released such nonpublic personal information in the past. *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (holding that a

---

[4] Although Hodes relies on section 6802(c) of the Act as support for his argument that governmental entities are exempt from the Act's provisions, that section merely states the rule against reuse of nonpublic personal information.

plaintiff opposing summary judgment must offer more than conclusory arguments), *aff'd*, 30 Fed. Appx. 20 (D.C. Cir. 2002).

### 3. Commercial Information

Hodes's third argument, unlike his first two, does have merit.  Hodes argues that the confidentiality provisions of the Gramm Leach Bliley Act only extend to records of individuals, not commercial entities.  *See* Pl.'s Mot. for Summ. J. at 4.  As referenced above, the Act applies to "nonpublic personal information," which the Act defines as information:

> (i) provided by a consumer to a financial institution;
> (ii) resulting from any transaction with the consumer or any service performed for the consumer; or
> (iii) otherwise obtained by the financial institution.

15 U.S.C. § 6809(4)(A).  The term "consumer," in turn, is defined as "an individual who obtains, from a financial institution, financial products or services which are to be used primarily for personal, family, or household purposes, and also means the legal representative of such an individual."  *Id.* § 6809(9).  The Act's non-disclosure provisions specifically contemplate "consumer" notice in the event of disclosure.  *See* 5 U.S.C. § 6802(a).

Based on these provisions, the Act's plain language suggests that its privacy protections extend to the records of persons, not commercial entities.  HUD fails to refute that conclusion (or even acknowledge Hodes's argument) in its submissions to the Court.  A Party that fails to refute an opposing party's argument on Summary Judgment may be found to have conceded the point. *See Speaks v. D.C.*, Civ. A. No. 031963, 2006 U.S. Dist. LEXIS 16776 at *12 n.1 (D.D.C. Apr. 6, 2006) ("Defendant's summary judgment motion seized upon these deficiencies in the record, yet Plaintiff's opposition papers are silent on the issue, which arguably provides an independent

basis for treating Defendant's argument as conceded."). Based on the statute's plain language and HUD's failure to refute Hodes's argument in this regard, the Court holds that HUD may only assert Exemption 3 as it pertains to persons, and it may not invoke Exemption 3 to withhold from disclosure information associated with commercial entities.

    B.    *FOIA Exemption 4*

Exemption 4 permits nondisclosure of (1) trade secrets and commercial or financial information, (2) obtained from a person, that is (3) is privileged or confidential. *See* 5 U.S.C. § 552(b)(4). The Parties agree that the only question raised as to Exemption 4 in this case is whether the requested information is "confidential." *See* Pl.'s Mot. for Summ. J. at 6 & n.3; Def.'s Reply at 7. The Parties also agree that where, as here, the submission of the information to the government is "involuntary," *see* Pl.'s Mot. for Summ. J. at 6-7; Def.'s Mot. for Summ. J. at 9, the information is confidential if it 1) impairs the government's ability to obtain necessary information in the future, 2) causes substantial harm to the competitive position of the person from whom the information was obtained, or 3) impairs other governmental interests, such as compliance and program effectiveness. See *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 & n.17 (D.C. Cir. 1974); *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc).

HUD argues that disclosure of the information sought by Hodes is likely to cause substantial competitive harm to the Issuers of Ginnie Mae-backed securities, and consequently, would impair Ginnie Mae's MBS Program. In support of this argument, HUD submits two affidavits by Theodore Foster, a Senior Vice President at Ginnie Mae, who describes the mortgage-backed securities industry as a highly competitive market in which financial

institutions routinely attempt to distinguish themselves from their competition.  According to Mr. Foster, if information about security holders were disclosed, Ginnie Mae's competitors would be able to solicit the security holders who invest in Ginnie Mae-backed securities "without incurring the time, labor and expense involved in developing their own customer list of security holders interested in mortgage-backed securities." Foster Decl. ¶ 15.  In addition, investors who "customarily have an expectation of privacy in information held by financial institutions"would be deterred from purchasing Ginnie Mae-backed securities in the future,  Id. ¶ 14, and might instead invest in the securities backed by Freddie Mac or Fannie Mae (two of Ginnie Mae's competitors) who "do not encounter the problem of unclaimed funds to any significant extent." Id. ¶ 16.

The Court is unpersuaded by Mr. Foster's reasoning.  The information at issue concerns commercial entities that (1) Issuers have been unable to locate for six months, Foster Decl. ¶ 8, and that (2) Ginnie Mae has been unable to locate through its "program to locate investors," which includes its partnership with the Internal Revenue Service designed to locate investors by "matching the Social Security Numbers in Ginnie Mae's records with the IRS tax database." Def.'s Reply, Ex. 1 ¶¶ 17-18 (Second Declaration of Theodore Foster dated July 3, 2007).[5]  If the Issuers, Ginnie Mae, and the Internal Revenue Service are all unable to locate the security holders, it is illogical to suggest that these same security holders will be solicited for investment

---

[5]  The Court's analysis is limited to commercial entities because the Court held above that information associated with persons cannot be disclosed pursuant to Exemption 3 and the Gramm Leach Bliley Act.  *See* section III.A, *supra*.

by issuers of other securities in competition with Ginnie Mae.[6]

Even assuming that Mr. Foster is correct that some commercial entities may prefer to remain anonymous, *see* Foster Decl. ¶ 14, his declaration paints with far too broad of a brush. Any commercial entity that prefers not to have its identity disclosed could remain anonymous by simply ensuring that it was receiving the payments owed by the Issuer, thereby avoiding inclusion on the Unclaimed Funds List. And because Mr. Foster's declaration does not address the small subset of commercial entities implicated (i.e., commercial entities who want to remain anonymous but cannot be located for an extended period of time), he fails to provide any specific information supporting the notion that such entities would prefer their anonymity even at the expense of receiving funds indisputably owed to them. Given this Circuit's decision in *Lepelletier v. Fed. Deposit Ins. Corp., et al.*, 164 F.3d 37 (D.C. Cir. 1999), which suggested that it was "overly paternalistic" to assume that individuals with unclaimed funds would want to remain anonymous if that would mean they would not receive funds owed to them, Mr. Foster's affidavit does not demonstrate with sufficient specificity that substantial competitive harm (and consequently an impairment of purpose) would result from disclosure when only a small subset of commercial entities would be affected and they might prefer to receive their funds in exchange for losing anonymity. *See Niagara Mohawk Power Corp. v. U.S. Dep't of Energy, et al.*, 169 F.3d 16, 18 (D.C. Cir. 1999) (analyzing Exemption 4 and finding that the government's "conclusory and generalized assertions [were] not enough to establish the requisite risk of impairment" and rejecting other "legally inadequate" arguments concerning competitive injury).

---

[6] If such solicitation were possible, it would cast serious doubt on the efficacy of Ginnie Mae's search efforts.

Accordingly, the Court finds that HUD has not properly invoked Exemption 4 to withhold information on the Unclaimed Funds List associated with commercial entities.[7]

    C.    *FOIA Exemption 6*

FOIA Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted the phrase "similar files" to include all information that applies to a particular individual. *See U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). The Supreme Court has also found that the "clearly unwarranted" language incorporates a "balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). *See also Ripskis v. Dep't of Hous. & Urban Dev.*, 746 F.2d 1, 2-3 (D.C. Cir. 1984). Thus, a court must "weigh the 'privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy.'" *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 46 (1999) (quoting *U.S. Dep't of Defense of Military Affairs v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992)).[8]

As a threshold matter, both Parties fail in their Motions for Summary Judgment to

---

[7] The Court notes that Hodes presents three alternative arguments as to why HUD improperly invoked Exemption 4, but the Court finds them all to be without merit.

[8] The Unclaimed Funds List contains information associated with both persons and commercial entities, *see* Foster Decl. ¶ 13, although the Court held above that the information associated with persons cannot be disclosed pursuant to Exemption 3 and the Gramm Leach Bliley Act. *See* section III.A, *supra*.

acknowledge that only individuals (not commercial entities) may possess protectible privacy interests under Exemption 6.  *See Sims, et al. v. Cent. Intelligence Agency*, 642 F.2d 562, 573 n.47 (D.C. Cir. 1980) ("Exemption 6 is applicable only to individuals"); *Nat'l Parks & Conservation Assoc. v. Kleppe, et al.*, 547 F.2d 673, 685 n.44 (D.C. Cir. 1976) ("[t]he sixth exemption has not been extended to protect the privacy interests of businesses or corporations").  Accordingly, HUD improperly invoked Exemption 6 to withhold information on the Unclaimed Funds List concerning commercial entities.

Even if the information at issue concerned persons and not commercial entities, the D.C. Circuit's decision in *Lepelletier v. Fed. Deposit Ins. Corp.* suggests that HUD's withholding of the information based on Exemption 6 was still improper.  164 F.3d 37 (1999).  In *Lepelletier*, the plaintiff was an independent money finder who sought the names of depositors with unclaimed funds at banks for which the defendant was the receiver.  *Id.* at 39.  Although the court found that there was no discernible public interest in the release of the names, *id.* at 47, the court also found that "the FOIA analysis under Exemption 6 must include consideration of any interest the individual might have in the release of the information, particularly when the individuals who are 'protected' under this exemption are likely unaware of the information that could benefit them."  *Id.* at 48.  The court concluded that it was "overly paternalistic to insist upon protecting an individual's privacy interest when there is good reason to believe that he or she would rather have both the publicity and the money than have neither."  *Id.*  Accordingly, the court found that Exemption 6 was not properly invoked to withhold the requested information, and ordered the information to be released with several conditions that would lessen any privacy invasion that might result from the disclosure.  *Id.*

The D.C. Circuit's analysis is equally applicable in the present matter, where there is no evidence to suggest that security holders would prefer to remain anonymous instead of receiving monies that are indisputably owed to them. Although HUD initially argues that *Lepelletier* contradicts Supreme Court precedent, it quickly and understandably abandons that position and argues merely that *Lepelletier* is distinguishable because in that case the defendant did not seek to locate the depositors and the funds would be forfeited to the defendant after a period of time.[9] The Court is unpersuaded that these are material distinctions. At stake in both *Lepelletier* and in the present case are individuals' interests in receiving funds that are owed to them balanced against their interests in privacy. Those interests are not necessarily dependent on how long the monies remain available nor the fervency with which Ginnie Mae seeks to locate the security holders. For these reasons, the Court finds that HUD improperly invoked Exemption 6 to withhold information associated with commercial entities on the Unclaimed Funds List.[10]

### IV. CONCLUSION

For the reasons set forth above, the Court shall grant in part and deny in part Defendant's [9] Motion for Summary Judgment, and shall grant in part and deny in part Plaintiff's [11]

---

[9] Contrary to HUD's initial suggestion, *Lepelletier* did not contradict the Exemption 6 balancing of interests discussed by the Supreme Court in *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 762 (1989). Rather, the D.C. Circuit described the factors a court should consider when analyzing an individual's interests for purposes of the balance of interests inquiry.

[10] The D.C. Circuit remained "concerned with the possibility of invading the privacy" of the individuals in *Lepelletier*, and for that reason, found that the information to be released in that case should not match the individuals' names with the specific amounts each was owed. 164 F.3d at 37-38. In the present case, the Court finds that the same concerns are not present because the information to be released concerns commercial entities (not individuals) that lack protectible privacy interests under Exemption 6 (and HUD does not argue otherwise).

Motion for Summary Judgment, based on Defendant's proper reliance on Exemption 3 to withhold information concerning individuals, and improper reliance on Exemptions 3, 4, and 6 to withhold information concerning commercial entities. HUD shall release all non-exempt information to Hodes in accordance with this Memorandum Opinion no later than February 25, 2008.

Date: January 31, 2008

                                                    /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge